**EASTMAN KODAK COMPANY**

v.

**The UNITED STATES.**

**No. 517–71.**

United States Court of Claims.

April 14, 1976.

Karl R. Price, Washington, D.C., Attorney of record for plaintiff. Ivins, Phillips & Barker, Washington, D.C., of counsel.

Kenneth R. Boiarsky, Washington, D.C., with whom was Asst. Atty. Gen. Scott P. Crampton, Washington, D.C., for defendant. Gilbert E. Andrews, Washington, D.C., of counsel.

Before COWEN, Chief Judge, DURFEE, Senior Judge, and DAVIS, SKELTON, KASHIWA, KUNZIG and BENNETT, Judges, en banc.

## OPINION

KUNZIG, Judge.

This income tax refund case comes before the court on appeal from the Trial Division where findings and an opinion were filed April 1, 1975 by Trial Judge George Willi, pursuant to Rule 134(h). His decision has been reviewed on the briefs, exceptions, and oral argument of counsel. Upon consideration thereof, the court finds itself in agreement with portions of that recommended decision and reaches essentially the same result on major sections of the case, although we base our opinion on somewhat different legal reasoning. Most of the Trial Judge's findings of fact are adopted, but with some modifications we deem proper upon consideration of exceptions by the parties.

Plaintiff and defendant contest the proper timing for plaintiff's deduction of payroll tax expenses. Plaintiff is an accrual basis taxpayer using calendar year reporting periods. The tax expenses arose in connection with three different types of compensation payments made to plaintiff's employees in 1965: (1) "year-end" wages, (2) bonuses, and (3) vacation pay. Plaintiff attempts to deduct such tax expenses in 1964, the year that the underlying compensation obligations *accrued*. Defendant asks us to conclude that plaintiff could not deduct the tax expenses until this underlying compensation was actually paid in 1965. The classic "all events" test [1] must be applied in the instant case to determine the proper timing for plaintiff's tax expense deductions. Applying this test, we hold that plaintiff may deduct in its 1964 return those taxes corresponding to the "year-end" wages accrued in 1964, but plaintiff may not deduct payroll taxes on accrued bonuses and vacation pay until its 1965 return.

The payroll tax expenses at issue here involve Kodak's payments under the Federal Insurance Contributions Act (FICA),[2] the Federal Unemployment Tax Act (FUTA),[3] and various state unemployment taxes.[4]

The compensation paid by plaintiff which gave rise to the taxes and, thus, the tax expense deductions involved in the instant

---

1. "[If] all events have occurred which fix the amount of the tax and determine the liability of the taxpayer to pay it," a deduction is available. *United States v. Anderson,* 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347 (1926).

2. Int.Rev.Code of 1954, § 3111, *as amended,* 75 Stat. 131 (1961).

3. Int.Rev.Code of 1954, § 3301, *as amended,* 74 Stat. 924 (1960), 77 Stat. 51 (1963).

4. Labor Law, McKinney's Consol. Laws of N. Y. Ann., §§ 560, 570; Tenn.Code Ann., § 50–1326; N.J.Stat.Ann., § 43:21–7; Smith-Hurd Ill. Ann.Stat. ch. 48, § 550; Unemployment Insurance, West's Ann.Calif.Codes, § 976; Vernon's Tex.Civil Stat.Ann., Art. 5221b–5. At the end of 1964, over 98 percent of plaintiff's employees were located in these states.

action, takes three forms. The first type is "year-end" wages. Wages earned during the last week of 1964 "accrued" as of the end of 1964, but were not paid until the first week of 1965. Kodak wants to deduct the payroll taxes on such "year-end" accrued wages in 1964.

Second, at the end of each year, plaintiff declared cash bonuses in favor of its employees. The right to receive this special compensation vested in employees at the end of 1964, but the bonuses were not payable until March 1965. Again, plaintiff desires a 1964 tax expense deduction. Since liability accrued in 1964, reasons plaintiff, the liability for tax should similarly accrue and yield a 1964 payroll tax expense deduction.

Third, as of the end of 1964, various of plaintiff's employees had earned the right to paid vacations to be taken in 1965. An employee's right to vacation pay vested in 1964 despite the fact that payment would not take place until the following year. Again, since plaintiff's liability for the vacation pay accrued in 1964, it would like to deduct the corresponding payroll tax expense on its 1964 return.

■ Both parties agree that plaintiff properly accrued and deducted the three types of compensation at the time its liability for the payments became fixed in 1964. They disagree on the proper year for deducting the payroll *tax* payments made to Government agencies as a result of the compensation payments. Plaintiff argues that its liability for all three types of compensation accrued in 1964, and the tax payments should be deducted in the same return.

The Internal Revenue Service (IRS) concluded that plaintiff was not entitled to deduct the payroll tax expense on the 1964 tax return and assessed a deficiency. Plaintiff paid the deficiency, filed a refund claim and by timely petition in this court, brought the present action after the IRS disallowed the claim.

Kodak makes a "five prong" assault on defendant's denial of the 1964 payroll tax expense deductions. First, since it consistently matched wage expense and payroll tax expense without challenge by the IRS during prior years, plaintiff claims that defendant cannot now complain of its tax accounting treatment of the payroll tax expenses. Second, Kodak contends the generally accepted principles of accounting should be adopted in this case. The payroll tax expenses which arise from the wages should be "matched" with the wages for tax accounting purposes. Third, the matching and allocation principles enumerated in *J. I. Case Co. v. United States,* 65 F.Supp. 464, 106 Ct.Cl. 267 (1946) are, according to plaintiff, applicable in the present case to grant it a 1964 deduction. Fourth, Kodak relies upon the "all events" test to claim 1964 deductions for the payroll taxes at issue here. Finally, plaintiff claims that it will be the victim of a double denial of the payroll tax expenses at issue here if defendant's position is upheld.[5]

Of all five arguments, only number four, Kodak's advocacy of the "all events" test, is applicable here.

■ First, despite the fact that plaintiff has consistently matched compensation and the related payroll taxes in its tax accounting, it cannot assert any right to continue such treatment from the mere failure of the IRS to challenge such practice in past years. At best, plaintiff's consistency is inconclusive. *Electric & Neon, Inc. v. Commissioner of Internal Revenue,* 56 T.C. 1324, 1333 (1971); *Mifflin v. Commissioner of Internal Revenue,* 24 T.C. 973, 979 (1955). Plaintiff must show not only that its treatment of the payroll tax expenses has been consistent, but also that it is correct.

■ Plaintiff's second argument, that generally accepted principles of accounting favor matching the compensation and the payroll tax may be sound from a business

---

5. The double denial question is not before the court at this time. This point has been severed by the Trial Judge and held for further proceed- ings pending resolution of the issues currently before the court.

accounting standpoint. However, tax accounting differs in many material respects from business accounting. One such area of divergence is the "matching" principle which plaintiff urges upon us in this case. *Cf. American Automobile Association v. United States,* 367 U.S. 687, 694–97, 81 S.Ct. 1727, 1730–32, 6 L.Ed.2d 1109, 1113–15 (1961). To obtain a deduction, plaintiff must show that tax accounting principles, not business practice, require such treatment.

We also cannot give credence to plaintiff's third argument, that the principles of *J. I. Case Co., supra,* create a 1964 payroll tax deduction in this instance. In *Case* we held that the taxpayer could deduct property taxes allocable to a short fiscal year since the taxpayer's income could not otherwise be accurately reflected. However, *Case* stemmed primarily from the nature of the taxpayer's short and nonrecurring fiscal year. We do not have such a situation in the facts at bar, and hold *J. I. Case Co.* inapposite.

Plaintiff's fourth argument, that the "all events" test applies to the instant facts to give a 1964 deduction, while not technically correct in all respects, is more true to the mark. Here Kodak has hit upon the proper test, but would have us apply that test in a legally erroneous manner.[6]

█ A tax which accrues in an earlier year but is not paid until the following year may be deducted in the prior year if it meets the "all events" test established by the Supreme Court in *United States v. Anderson,* 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347 (1926). If all events which determine liability and fix the amount of the tax occur before the end of the prior year, a deduction is available to an accrual basis taxpayer.

In a *technical legal sense* it may be argued that a *tax does not accrue until* it has been *assessed* and becomes *due*; but it is also true that in advance of the assessment of a tax, *all the events may occur* which *fix the amount* of the tax and *determine the liability* of the taxpayer to pay it. In this respect, for purposes of accounting and ascertaining *true income* for a given accounting period, the munitions tax in question here did not stand on any different footing than other accrued expenses appearing on appellee's books. *Id.* at 441, 46 S.Ct. at 134, 70 L.Ed. at 351. (Emphasis added).

The "all events" test has been applied frequently and regularly in this court and other jurisdictions to determine proper timing for tax expense deductions. *See, e. g., United States v. Consolidated Edison Co.,* 366 U.S. 380, 385 n. 5, 81 S.Ct. 1326, 1329, 1330, 6 L.Ed.2d 356, 360 (1961); *Clevite Corp. v. United States,* 386 F.2d 841, 843, 181 Ct.Cl. 652, 658 (1967); *Turtle Wax, Inc. v. Commissioner of Internal Revenue,* 43 T.C. 460, 466–67 (1965); *Denver & Rio Grande Western Railroad Co. v. Commissioner of Internal Revenue,* 38 T.C. 557, 572 (1962). Most recently, we applied the "all events" test in *Union Pacific Railroad Co. v. United States,* 208 Ct.Cl. ——, 524 F.2d 1343 (1975).[7] We held that the test applied to determine deductibility of payroll taxes, similar to those in the instant case, which stemmed from accrued vacation pay. In *Union Pacific* we concluded that plaintiff was not entitled to deduct payroll taxes in the earlier year because "all events" fixing liability for the tax had not occurred in this prior year. *It must be reemphasized that we used the "all events" test to reach this result.*

The "all events" test has become so accepted that it is now embodied in the Income Tax Regulations.

Under an accrual method of accounting, an expense is deductible for the taxable year in which all events have occurred which determine the fact of liability and the amount thereof can be determined

---

6. For plaintiff's fifth argument, *see* Note 5, *supra.*

7. Trial Judge Willi did not have the benefit of *Union Pacific* at the time he rendered his Kodak opinion. The Kodak recommended decision was submitted in April 1975, while *Union Pacific* was announced October 22, 1975.

with reasonable accuracy. Treas.Reg. § 1.461–1(a)(2) (1970). (Originally promulgated in 1957, 1958–1 Cum.Bull. 215 (1957)).

Normally we would proceed directly to apply the "all events" test to the facts of the instant situation in order to determine the proper deduction time for the tax expense at issue here. However, defendant argues that the recent Supreme Court decision in *Otte v. United States,* 419 U.S. 43, 95 S.Ct. 247, 42 L.Ed.2d 212 (1974) requires us to hold that payroll taxes are not deductible until the underlying compensation is *paid.* Therefore, we must first ascertain the impact of *Otte* on the "all events" test.

The *Otte* decision relied upon by defendant is a bankruptcy case. The specific portion of the case which defendant would have us use instead of the "all events" test concerned the filing of proofs of the bankruptcy claim. The general rule in the bankruptcy setting is that in order to obtain a share of the bankrupt's estate, proof of claim against the bankrupt must be filed within six months of the initial bankruptcy court order. In *Otte,* neither the United States nor New York City had filed proof of payroll tax liability on the part of the bankrupt. The bankruptcy trustee argued that the taxes could not be recovered from the estate because of this failure to file notice of the tax claim. The government instrumentalities contended otherwise. The Supreme Court held in favor of the governments. Reasoning that "[L]iability for the tax accrues only when the wage is paid," the Court excused both the United States and New York City from the filing requirement.

In the instant case, defendant argues that *Otte* either overrules the "all events" test in the payroll tax area, or it presents an "ultimate application" of the test. For several reasons we reject such arguments.

First on a fundamental level, the *Otte* decision rests on bankruptcy law, the "all events" test on tax accounting principles. *Otte* never addressed the timing of "accrual" in the tax setting. We simply cannot presume that a bankruptcy decision overrules, *sub silentio,* tax accounting principles established by the Supreme Court some fifty years ago and consistently applied by courts, tax regulations and taxpayers in all intervening years.

Second, the rationale of *Otte* does not conflict with the "all events" test. To say, as defendant argues, that *Otte* alters the "all events" test, confuses two very different concepts. The *Otte* decision hinges upon the accrual of legal liability. The "all events" test measures the proper timing for expense deductions. The technical term "accrual" as used in *Otte* refers to the time that a liability comes into existence as a *legally enforceable claim.* The "all events" test on the other hand looks to a liability that is so fixed that the fact of liability is certain and the amount thereof reasonably ascertainable, although not necessarily legally enforceable. The "all events" test thus allows deductions when the taxpayer has a special kind of knowledge which gives him enough facts to demonstrate the absolute necessity of paying an expense at some future date without regard to such matters as actual payment taking place, existence of legal liability, or accrual. Therefore, we cannot construe the *Otte* language as affecting the "all events" test since *Otte* is based on a concept of "accrual" which has no relation to the problem of deduction timing.

Third, we should not drive a further wedge into existing differences between tax and business accounting methods without a compelling reason to do so. Tax accounting treatment of income and expense often differs from the generally accepted principles of business accounting. *Cf. American Automobile Association, supra.* However, there is usually some good explanation for the divergence. For example, the question of deduction of expense from income is an area where business accounting and tax accounting provide different treatment of expense items. In *Union Pacific, supra,* we determined that the taxpayer could not deduct payroll taxes on accrued vacation pay in an earlier year because the *fact of tax liability* could not be

determined with certainty as of the end of the prior year. But, from a business standpoint, the tax expense was so readily calculable that the taxpayer rightfully would have been warranted to take the expense deduction on its income statement in the earlier year. Why this difference between business and tax accounting? The primary reason here is *certainty.* For *business purposes,* the expense can be deducted if a *reasonable estimate* can be made. For *tax purposes,* the expense cannot be taken unless (1) the fact of liability is *certain* and (2) a reasonably ascertainable computation of the amount can be made.

■ If we follow *Otte* and conclude that no payroll tax deduction can be taken until the underlying wage is *paid,* we would create a further split between tax and business accounting *without* a reasonable explanation for requiring different treatment. Absent a compelling basis providing otherwise, our goal should be to reconcile business and tax treatment of an item, rather than to drive them farther apart.

Finally, defendant argues that application of *Otte* does not overrule or even alter the "all events" test, but merely presents its "ultimate application" in the payroll tax area. However, defendant ignores the fact that if the underlying wage payment is the necessary last hurdle needed for the test, there is no test remaining. Such an interpretation would sound the death knell of the long-followed "all events" test in the payroll tax area. The "payment" requirement effectively puts taxpayers on a cash basis for purposes of payroll tax deductions.

We see no reason for construing *Otte* in this manner.

In short, we do not interpret *Otte* as overruling or changing the application of the "all events" test. As the Supreme Court declared some fifty years ago, the "all events" test is the valid indicator for timing expense deductions.[8]

Having determined that we must apply the "all events" test, we turn to the three types of compensation in the present action: (1) "year-end" wages, (2) bonuses, and (3) vacation pay.

We shall evaluate each of these types of compensation to find if the test is met for 1964. Before we begin this undertaking, an understanding both of the nature of the payroll taxes and of the "all events" test is called for.

■ The "all events" test presents two hurdles for taxpayers who desire expense deductions. First, the taxpayer must show that the *fact of liability* is certain as of the end of the year in question. Second, the taxpayer must demonstrate that the amount of the liability can be reasonably ascertained. The central consideration here is that the *fact of liability* is measured on an item by item basis, rather than as an overall estimate. More specifically, in the payroll tax area, the fact of liability is measured by considering *each individual employee* rather than the totality of all employees. *Union Pacific, supra,* 524 F.2d at 1350; *Clevite Corp. v. United States,* 386 F.2d 841, 843, 181 Ct.Cl. 652, 658 (1967). Rev.Rul. 54–608, 1954–2 Cum.Bull. 8, 9–10. In the case at bar, Kodak must show that

8. In addition to its reliance on *Otte* for the proposition that plaintiff may not deduct the payroll taxes until the underlying compensation is paid, the dissent cites a number of statutes and regulations. These statutes and regulations are inapplicable to the *deduction timing problem* before the court in the instant case. For example, the FICA and FUTA statutes used by the dissent (§§ 3111, 3301) pertain to "Rate of tax," *not* to timing of deductions. The Treasury Regulations (§ 31.3111–3, 4) also do *not* govern deductions for the tax expense. Finally, the dissent relies upon section 162(a) to bolster its "payment requirement." While this section does apply to the instant problem, the dissent's interpretation of the term "incur" is so narrow as to emasculate accrual tax accounting. Such an interpretation of "incur" contravenes tax statutes (*see, e. g.* § 446(b), taxpayer's accounting method must clearly reflect income) and numerous Supreme Court decisions (*see, e. g. Anderson, supra.* "It has never been questioned that a taxpayer who accounts on the accrual basis may *and should,* deduct from gross income a liability which really accrues in the taxable year." *Dixie Pine Products Co. v. Comm'r of Internal Revenue,* 320 U.S. 516, 519, 64 S.Ct. 364, 365, 88 L.Ed. 270, 272 (1930) (emphasis added)).

the fact of payroll tax expense for the given employee was *certain for each employee* as of the end of 1964 *and* that the amount of such liability was reasonably ascertainable with regard to each employee.[9]

The payroll taxes at issue in this case are all of the same nature. Each represents a tax levied as a percentage of compensation paid by an employer to his employees.[10] If the taxes held no more complications than this, application of the "all events" test to them would be easy. When the employer became liable for the wages, we could simply apply the tax rate and find precisely how much tax would arise in conjunction with the compensation. For example, if plaintiff owed $100,000 in accrued vacation pay to its employees at the end of 1964, plaintiff would, absent further complications, have been liable for $3100 in FUTA tax and for $3625 in FICA tax in 1965. All events fixing this liability would have occurred at the time the vacation pay accrued at the end of 1964, and plaintiff would have been entitled to a 1964 deduction for FICA and FUTA tax.

However, one added factor complicates application of the "all events" test. This is the yearly "ceiling" on the payroll taxes at issue here. Each of the taxes contains such a ceiling.[11] For example, the FICA ceiling on wages paid during the years at issue here was $4800. Until an employee earned this amount in a given year, the employer paid FICA tax on his wages. After the employee earned $4800 in a given year, no FICA tax was imposed on subsequent wages paid by the employer. The effect of the ceiling is to create a degree of uncertainty in determining, as of the end of a given year, at what time or for how many months an employer will have to pay tax

during the next year for each individual employee.

Let us use another example. This time we refer to the *Union Pacific* case mentioned above. There, various employees earned vacation pay in 1942. The plaintiff became liable to pay this compensation as of the end of 1942 despite the fact that its employees were not to be paid until 1943. The payroll tax on these accrued wages was subject to an individual monthly ceiling of $300. If an employee earning $600 per month took his vacation during the first week of a given month in 1943, payroll tax would be imposed on the employer. If he took the vacation during the last week, no tax would be imposed. The employees could elect the time they would take their 1943 vacations, and there was no way that plaintiff could tell at the end of 1942 whether or not it would, in fact, have to pay tax on a given employee's vacation pay in 1943. Thus all events were not met because of the ceilings, and the taxpayer could not deduct the payroll taxes in its 1942 return. *Union Pacific, supra.*

Having discussed the nature of the "all events" test and the payroll taxes, we now apply the "all events" test to the tax expenses in question.

 The first compensation payment we consider is the "year-end" wages which were earned in 1964, but paid the first week of 1965. No one disputes the fact that plaintiff was totally and unequivocally obligated to pay the wages as of the end of 1964. Plaintiff has demonstrated that its legal obligation to pay the "year-end" wages was fixed, certain, and exactly ascertained upon the termination of that tax year. It properly deducted the "year-end" wage expense from its 1964 income. Con-

---

**9.** The determination of the fact of liability by evaluating each individual employee obviates plaintiff's "forecasting" argument. (Lumping all employees together and determining tax liability as an overall guestimate). The "all events" test never contemplated creation of a legal weather bureau for tax deductions. The unreliability and uncertainty inherent in "forecasting" tax expenses is obvious.

**10.** The FICA tax rate for the years in question was three and five-eighths percent; the FUTA, 3.1%.

**11.** The following ceiling applied to the taxes at issue here: FICA, $4800 per year; FUTA, $3000 per year; New York unemployment, $3000 per year; Tennessee unemployment, $3300 per year.

currently, plaintiff's obligation for payroll tax on the "year-end" wages also became *fixed* and *certain* as an automatic consequence of the definite and legal obligation to pay the "year-end" wages. All that was required of plaintiff to determine its tax was a simple, precise, mathematical calculation. *Nothing* depended on the taxpayer's discretion or on outside events which might or might not occur.[12] The payroll taxes on "year-end" wages meet the "all events" test, and plaintiff is entitled to deduct them on its 1964 return.

 The second type of accrued compensation, bonuses, presents a more complex problem. The bonuses accrued on December 31, 1964. They were payable in March 1965. Since plaintiff knew the yearly salary of each employee, it could, but for one event, determine as of the end of 1964, the fact of tax liability on the bonuses. The one event which clouds this picture stems from the possibility that the employee might receive a pay raise during the interval between December 31 and the time of the March bonus payment.

We turn to another example. An employee earning $2000 per month was to receive his dividend of $800 on March 1, 1965. On December 31, 1964, plaintiff could readily see the fact of liability in that it would be responsible for FICA tax on the bonus when it made the March payment. But, if the employee received a raise to $3000 per month in January, effective February 1, 1965, plaintiff would no longer be liable for the tax when the March payment

was made, since the employee would have reached the $4800 ceiling in February.

Because of the uncertainty raised by possible early 1965 salary increases, we cannot say that plaintiff knew in December 1964 the fact of its 1965 tax liability on each individual employee for bonuses. Since the fact of tax liability must be certain, the "all events" test fails of application at this point. We find it unnecessary to reach the second hurdle, whether the amount itself was reasonably ascertainable. The "all events" test is not met for plaintiff's taxes on accrued bonuses and Kodak may not deduct the payroll taxes imposed on such bonuses in its 1964 return.

 The final type of compensation at issue here, accrued vacation pay, presents a situation quite similar to the *Union Pacific* case. Although this case differs from *Union Pacific* in that the tax ceilings are yearly rather than monthly, the principle remains the same. Plaintiff cannot demonstrate that it knew in December 1964 when a given employee would take his 1965 vacation. Thus Kodak could not know in 1964 whether the employee would take the vacation before or after said individual employee's salary reached the 1965 ceiling. Plaintiff could not determine precisely as of the end of 1964, the fact of tax liability on vacation pay earned by each individual employee. Since the fact of tax liability must be certain, the "all events" test fails of application at this point. We again find it unnecessary to reach the second hurdle, whether the amount itself was reasonably ascertainable.

---

12. The dissent contends that Kodak's obligation to pay the taxes on "year-end" wages was not fixed at the end of 1964, but was contingent. It cites many cases, presumably in support of such a proposition. We agree with the dissent that if a liability is contingent, the "all events" test fails of application. Indeed, in each case cited by the dissent, the obligation was so uncertain and contingent that the "all events" test could not be used. However, the essential difference between such cases and the present action is "glossed over" by the dissent. In the cited cases, expenses could not be deducted because the obligation was *not fixed.* In the instant case, the payroll taxes on "year-end" wages (using the dissent's own tests)

were: (1) determined; (2) settled; (3) certain; (4) definite; (5) conclusively fixed; (6) authoritatively fixed; (7) within set bounds or limits, and (8) limited in extent or scope. Clearly plaintiff's payroll tax obligation on the "year-end" wages was *not contingent* and the dissent's cases are inapposite. Further, we cannot say (as does the dissent) that the remote possibility of plaintiff's bankruptcy injects an element of uncertainty sufficient to deny a deduction. After all, bankruptcy is always a "possibility," and therefore the "all events" test could never apply in any situation. Also, such reasoning would totally destroy accrual tax accounting and would clearly conflict with section 446(b), *supra.*

In summary, in this income tax refund suit, plaintiff attempts to obtain a 1964 deduction for payroll taxes imposed on compensation which plaintiff properly accrued and deducted in its 1964 tax return. The principles of "matching," of consistency in past accounting practice without challenge, and of allocation as in *J. I. Case Co.* do not grant plaintiff the right to such 1964 deduction. The "all events" test is the proper method for determining the deductibility of payroll taxes in 1964. *Otte* does not operate to extinguish the "all events" test in the tax arena. The test must be applied to each employee on an individual basis. Plaintiff must show that the fact of tax liability is certain *and* that the amount of tax is reasonably ascertainable for each individual employee. For the tax on "year-end" wages, plaintiff has been able to demonstrate both, but has failed to show that the fact of tax liability was certain with respect to the tax on bonuses and vacation pay.

Accordingly, plaintiff is not entitled to a 1964 income tax deduction for payroll taxes pertaining to accrued bonuses and accrued vacation pay. Plaintiff is entitled to deduct from its 1964 income, payroll taxes imposed on "year-end" accrued wages.

BENNETT, Judge (concurring):

*Otte v. United States,* 419 U.S. 43, 95 S.Ct. 247, 42 L.Ed.2d 212 (1974), announces the principle that only at such time as the underlying employee compensation is paid does the legal liability for appurtenant employment taxes become presently enforceable. This is a good rule if properly confined to a case such as *Otte.* But, prior to the moment at which legal liability for employment taxes becomes presently enforceable, for tax purposes all events may occur which of logical necessity collectively determine whether or not the taxpayer will at some later time encounter a presently enforceable legal liability for such taxes. In the instant case employees' year-end wages were earned in 1964, subject to actual payment at a time in 1965 when liability for employment taxes would attach to such payment as a matter of law. Therefore, the fact of legal liability for employment taxes—enforceable at a future time—existed in 1964, as soon as year-end wages were earned. The earning of year-end wages constitutes the final event determinative of the fact of liability for appurtenant employment taxes in a reasonably ascertainable amount in this part of the case. Accordingly, employment taxes attributable to such year-end wages may be deducted in the year the wages are earned in the case of an accrual basis taxpayer.

The dissent rightly observes that the taxpayer could properly report a deduction for the year-end wages themselves in the year earned, "even though the wages were not yet due or payable." Thus, the court appears to be unanimous in the view that prior to the time a legal liability becomes presently enforceable, all events may well come to pass determining the fact of liability in a reasonably ascertainable amount. If the contingency that the wages will not be paid when actually due does not preclude a deduction for such wages in the year earned, I see no logical reason why the same contingency should work differently and rule out a deduction for appurtenant employment taxes corresponding to the year-end wages accrued in the same year and which wages give rise to the taxes. All events have fixed both liability and the reasonably ascertainable amount of taxes. I do not consider that the Supreme Court has overruled this test which has been the law at least since 1926 in timing expense deductions. *Otte* did not even mention *Anderson,* let alone overrule it. Nor was it necessary to discuss *Anderson* since it was a problem in quite a different context. *Otte* is no authority presently relevant and the numerous authorities relied on in the dissent are not relevant when we consider that the premise used for them—payment of wages as the controlling event that would allow taxes to be accrued—is without foundation under the facts and law of this case.

With deference to the thorough analysis set down in Judge Skelton's opinion, I join the majority opinion.

SKELTON, Judge (dissenting):

I cannot agree with the majority opinion in this case for the many reasons set forth below:

## I

The majority opinion is in direct conflict with the unanimous decision of the Supreme Court in *Otte v. United States,* 419 U.S. 43, 95 S.Ct. 247, 42 L.Ed.2d 212 (1974).

In the instant case the majority holds that the accrual taxpayer, Eastman Kodak Company (Kodak), had a fixed, determined, and certain obligation and liability for taxes under the Federal Insurance Contributions Act (FICA), the Federal Unemployment Tax Act (FUTA), and various state unemployment tax statutes, in 1964 on certain described wages of its employees for services rendered in that year and could accrue and deduct such taxes in 1964 as expenses paid or incurred in that year even though such wages were not paid until 1965.[1]

The Supreme Court held in positive and unequivocal language in the *Otte* case, speaking through Mr. Justice Blackmun, that no such tax liability exists until the wages are paid and that the accrual of such tax liability occurs only when the wages are paid. Quoting from the opinion in the *Otte* case we find that the Court held:

* * * *Liability for the taxes accrues only when the wage is paid.* Sections 3402(a) and 3101(a) of the 1954 Code; * * *. The wages that are the subject of the wage claims, although earned before bankruptcy, were not paid prior to bankruptcy. *Freedomland [the employer] had incurred no liability for the taxes. Liability came into being only during bankruptcy.* [When the trustee paid the

wages to the employees.] * * * [*Id.* at 55, 95 S.Ct. at 255, 42 L.Ed.2d at 223.] [Emphasis supplied.]

Speaking further, the Court said:

* * * As has been noted above, *the taxes did not become due and owing at all until the claims, constituting wages, were paid.* * * * [*Id.* at 56, 95 S.Ct. at 256, 42 L.Ed.2d at 224.] [Emphasis supplied.]

With further reference to the accrual of the taxes, the Court stated:

* * * *They [withholding taxes] accrue only as those claims [for wages] are paid* and, to the extent of that payment, the payment of the taxes should be assured. * * * [*Id.* at 57, 95 S.Ct. at 256, 42 L.Ed.2d at 225.] [Emphasis supplied.]

I agree with our Trial Judge George Willi that the *Otte* case is controlling and dispositive of the instant case against the taxpayer. The majority has apparently brushed the *Otte* decision aside because it was a bankruptcy case, but in doing so they have ignored the holding of the case that is controlling here, namely, that an employer, (such as Kodak), has no liability whatever for withholding taxes on wages of its employees until the wages have been paid, and such taxes cannot be accrued until after the payment of such wages. Kodak was in the same position in 1964 with respect to such taxes as the employer in the *Otte* case. Neither employer had paid the wages to the employees, and, consequently, had no liability for the payment of the taxes, and for that reason could not accrue them until the underlying wages were paid. For all of these reasons, the majority opinion conflicts with the *Otte* decision. The majority has failed and refused to follow that decision of the Supreme Court, which is error.[2]

1. In this opinion the terms "wages," "dividend bonuses," and "vacation pay" will be considered and referred to as "wages" because of the provisions of Section 3306 of the Internal Revenue Code (26 U.S.C. § 3306 (1964)) as follows:

"§ 3306. *Definitions.*

* * * * * *

(b) *Wages.—*

For purposes of this chapter, the term "wages" means all remuneration for employment, including the cash value of all remuneration paid in any medium other than cash; * * *"

Both parties agreed that all of these items should be treated as "wages."

2. In refusing to follow the decision of the Supreme Court in the *Otte* case, the majority

## II

The majority opinion is contrary to the following controlling statutes.

1. Section 162 of the Internal Revenue Code of 1954 (26 U.S.C. § 162 (1964)) provides as follows:

§ *162. Trade or business expenses.*

(a) *In general.—*

There shall be allowed as a deduction all the ordinary and necessary expenses *paid or incurred during the taxable year* in carrying on any trade or business, * * * [Emphasis supplied.]

Certainly the taxes here were not *paid* during the taxable year of 1964 when the taxpayer accrued and deducted them. Neither were they *incurred* during that year. We need look no further than the *Otte* case to decide that there was no obligation or liability on Kodak for the taxes in 1964 because the underlying wages had not been paid. Therefore, the tax liability on such wages was not *incurred* during that taxable year and could neither be accrued nor deducted. The word "incur" is defined in Webster's Third New International Dictionary (1967 ed.) as follows:

Become liable or subject to; to render liable or subject to.

Kodak was neither liable for nor subject to the payment of the taxes until it paid the wages. Therefore, it must be concluded that the majority opinion is in conflict with Section 162 of the Code.

2. The FICA provision of the Code (26 U.S.C. § 3111 (1964)) provides as follows:

§ *3111. Rate of tax* [As amended by Sec. 201(c), Social Security Amendments of 1961, Pub.L. No. 87–64, 75 Stat. 131.]

In addition to other taxes, *there is hereby imposed on every employer* an excise tax with respect to having individuals in his employ, equal to the following percentages of *the wages* (as defined in section 3121(a)) *paid by him* with respect to employment (as defined in section 3121(b))—

\* \* \* \* \* \*

(2) *with respect to wages paid during the calendar years 1963 to 1965, both inclusive,* the rate shall be 3⅝ percent; [Emphasis supplied.]

The FUTA provisions of the Code (26 U.S.C. § 3301 (1964)) are very similar, as follows:

§ *3301. Rate of tax* [As amended by Sec. 523(a), Social Security Amendments of 1960, Pub.L. No. 86–778, 74 Stat. 924 and Sec. 2(a), Act of May 29, 1963, Pub.L. No. 88–31, 77 Stat. 51.]

*There is hereby imposed on every employer* (as defined in section 3306(a)) for the calendar year 1961 and for each calendar year thereafter *an excise tax,* with respect to having individuals in his employ, equal to 3.1 percent *of the total wages* (as defined in section 3306(b)) *paid by him during the calendar year* with respect to employment (as defined in section 3306(c) after December 31, 1938. In the case of wages paid during the calendar year 1962, the rate of such tax shall be 3.5 percent in lieu of 3.1 percent. In the case of wages paid during the calendar year 1963, the rate of such tax shall be 3.35 percent in lieu of 3.1 percent. [Emphasis supplied.]

It is clear from these provisions of the Code that the taxes are imposed on employers, such as Kodak in our case, on wages *paid by the employer during the calendar year in question.* If he does not pay any wages during a calendar year, he is neither obligated to pay a tax nor liable for one, and, of course, could neither accrue a tax as

appears to be making the same error the then majority made in *Mason v. United States,* 461 F.2d 1364, 198 Ct.Cl. 599 (1972), when they failed to follow the Supreme Court's decision in *West v. Oklahoma Tax Comm'n,* 334 U.S. 717, 68 S.Ct. 1223, 92 L.Ed. 1676 (1948). The Supreme Court reversed the decision in the *Mason* case in *United States v. Mason,* 412 U.S. 391, 93 S.Ct. 2202, 37 L.Ed.2d 22 (1973) because the majority failed to follow its decision in the *West* case.

an expense nor deduct it from his income tax. That is Kodak's situation here. It did not pay the wages in 1964 and consequently no tax was imposed upon it and it could not legally accrue or deduct any tax. The majority is in error in holding contrary to these statutes.

### III

The majority opinion conflicts with the following Treasury Regulations on Employment Tax (26 C.F.R.)

The applicable Treasury Regulations provide as follows:

§ 31.3111–3 When employer tax attaches.

The employer *tax attaches at the time that the wages are paid by the employer.* * * * [Emphasis supplied.]

§ 31.3111–4 Liability for employer tax.

The employer is liable for the employer tax with respect to the wages *paid* to his employees for employment performed for him. [Emphasis supplied.]

These regulations could not be stated more clearly that the employer is liable for taxes on wages *paid* to his employees and that *such tax attaches at the time wages are paid and not before.* The majority apparently ignore these regulations and the foregoing statutes upon which they are based and allow Kodak to accrue and deduct taxes on wages due its employees in 1964 even though the wages were not paid in that year and even though it had no liability for such taxes in 1964 by the plain wording of the statutes and regulations. The majority have not held that the statutes and regulations are invalid, yet such a holding is required if the decision of the majority is a correct interpretation of the law. It is clear that even the majority is unwilling to go that far. Therefore, the statutes and regulations are valid and controlling, and the majority erred in their opinion which clearly conflicts with the statutes and regulations.

### IV

The majority opinion fails to meet the requirements of the "all events" test of the Supreme Court and Treasury Regulations.

The mainstay of the majority opinion is that the requirements of the "all events" test have been met in this case, and their decision is based on that premise. It follows that if the "all events" requirements have *not* been complied with, the majority opinion is wrong. I propose to show in the following paragraphs that the majority opinion does not comply with the "all events" test.

The "all events" test was established by the Supreme Court in *United States v. Anderson,* 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347 (1926). In that case the Revenue Act of 1916 imposed a tax on manufacturers on their profits on munitions manufactured by them in 1916. This tax was paid in 1917. The Government contended that the taxpayer should have deducted the munitions tax in 1916 in computing its income tax. The accrual basis taxpayer contended that the tax was deductible in 1917 when it was paid. The Court held that the statutory liability to pay the tax was fixed as soon as the income was earned, and, since the income and profits were earned by the end of the 1916 taxable year, the liability for the tax became fixed in 1916 and was deductible in that year rather than in 1917, the year of payment. It is clear that in that case the tax was by statute fixed as a charge on the earnings of the company in 1916. Furthermore, everything had been done in 1916 to fix the liability of the company for the taxes and nothing remained to be done in 1917 to fix or determine such liability. It is evident that the facts in *Anderson* are distinguishable from those in the instant case, because here everything had not been done in 1964 to fix and determine the liability of Kodak to pay the taxes. The missing and controlling event was the failure to pay the wages in 1964. Without such payment, there was no fixed, certain, or determined liability on

Kodak to pay the taxes. Consequently, the vital, controlling, and missing "event" was missing from the "all events" test, namely the payment of the wages in 1964, without which all events had not occurred to fix or determine any tax liability on Kodak on such wages in 1964. In fact, without the payment of the wages in 1964, there was no liability whatever on Kodak in 1964 to pay taxes on such wages. *See Otte v. United States, supra,* and the above statutes and regulations.

The all events test set forth in the *Anderson* case states:

> * * * *[A]ll the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it.* * * * *[T]he munitions tax* here in question *did not stand on any different footing than other accrued expenses* appearing on appellee's books. * * * [269 U.S. at 441, 46 S.Ct. at 134, 70 L.Ed. at 351.] [Emphasis supplied.]

It will be noted that in *Anderson* the Court was dealing with an entirely different statute that *fixed* a munitions tax liability on munitions profits for 1916, which was an actual expense or element of cost in the production of income for that year, and a *definite liability* to pay the tax that had been imposed on the manufacturer by the end of 1916. Every fact or circumstance affecting the *fixing* or *determination* of the tax as a definite obligation of the taxpayer had occurred by the end of that year. By the close of 1916, liability for the tax had become definitely fixed, the tax being imposed *by statute* on the operations for 1916, which were terminated on December 31, 1916. Neither *liability for the tax* nor the amount payable could be affected under the law by anything occurring after December 31, 1916. The taxpayer in that case set up a monthly reserve of $35,000 on its books in 1916 to pay the munitions tax on its profits for that year, and on December 31, 1916, this reserve account was closed out and a charge was made on its books against the corporate surplus for account of the 1916 munitions taxes of $86,541.95. The Court concluded that the reserves for munitions

taxes on taxpayer's books were deductible under the Act of 1916 for that year.

Thus, we see that *Anderson* involved an entirely different statute compared to those in the instant case. The munitions statute *fixed* a definite liability on the taxpayer in 1916 for taxes on its profits in that year. There is no statute in our case fixing liability on Kodak in 1964 for withholding taxes on unpaid 1964 wages. Furthermore, Kodak did not set up a reserve for such taxes in 1964.

It is clear that the *Anderson* case and our case are both controlled by different applicable governing statutes and regulations. In *Anderson,* the statute imposed and fixed the tax liability of the taxpayer in 1916 on the profits for that year. In our case, the FICA and FUTA statutes impose taxes on wages whenever paid, whether in 1964 or later, but there is no tax liability until the wages are paid.

The all events test was designed to allow the accrual of expenses that were fixed, determined, and certain, as for instance, the wages in our case. The services had been performed by the employees in 1964 and the liability of Kodak to pay them their wages was fixed, determined, and certain. Nothing further remained to be done to fix or make certain taxpayer's liability in this regard, even though the wages were not yet due or payable, and, accordingly, the wages were properly accruable in 1964. The liability for the taxes on wages is an entirely different matter, because nothing occurred in 1964 to fix, determine, or establish liability of Kodak for taxes on wages, because the controlling event that would allow the taxes to be accrued had not yet occurred, namely the payment of the wages. See *Otte* and the above statutes and regulations.

The so-called all events test is set forth in Treasury Regulation 1.461–1 in pertinent part as follows:

> § 1.461–1 General rule for taxable year of deduction
>
> * * * * * * * * * * *

(2) Taxpayer using an accrual method. * * * [A]n expense is deductible for the taxable year in which *all events have occurred which determine the fact of the liability* and the amount thereof can be determined with reasonable accuracy. * * * [*N*]*o accrual shall be made in any case in which all of the events have not occurred which fix the liability*, * * *. [Emphasis supplied.]

It will be noted that both the *Anderson* case and the foregoing regulation require a liability to be "fixed" and "determined" by the occurrence of all the events necessary to establish the fact of liability before it can be accrued and deducted in a taxable year. It is clear that the facts in the instant case do not meet the requirements of this test.

The word "fix" is defined in Black's Law Dictionary 765 (4th ed. 1968) as follows:

Determine; settle; certainty and definiteness. To fasten a liability upon one. To transform a possible or contingent liability into a present and definite liability.

The word "determine" is defined in Webster's Third New International Dictionary (1967 ed.) as follows:

To fix conclusively or authoritatively; to set bounds or limits to; to limit in extent or scope.

It must be conceded that there was no fact in this case that fixed, determined, or made certain a present and definite liability of Kodak in 1964 for the taxes on the unpaid wages of its employees. Consequently, the accrual and deduction of such taxes by it in 1964 when it had no liability in that year with respect to such taxes, was contrary to the decision of the Supreme Court in *Anderson* and in conflict with Treasury Regulation 1.461–1(2) cited above.

The majority have allowed Kodak to accrue and deduct in 1964 a *contingent* tax liability on the unpaid wages of its employees. To put it another way, its liability for taxes on wages was not fixed, determined, nor certain as an obligation in 1964 but was *contingent* on its payment of the wages. The Supreme Court and other courts have held many times that an accrual taxpayer may not accrue and deduct a contingent liability under the all events test. Considering the Supreme Court decisions on this question in chronological order, we find the following:

In *Lucas v. American Code Co.,* 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538 (1930) an accrual taxpayer sought to deduct as a loss in 1919 the amount of a judgment for breach of contract it suffered in 1922 and paid in 1923. The Court disallowed the deduction in 1919 even though the breach of contract occurred then because its liability was contingent. The Court said:

The prudent business man often sets up reserves to cover *contingent liabilities. But they are not allowable as deductions.* The reserve set up by the company was of that character. It cannot be said that the loss actually paid by the company in 1923 was, as a matter of law or of undeniable fact, sustained in 1919. Nor did the company so regard it. *The case at bar is unlike United States v. Anderson,* 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347. There, the liability for the munitions tax at a fixed rate on the business done in 1916 had confessedly accrued in that year and was a charge on the business of that year, although the exact amount due may not have been then ascertainable and the tax was not payable until 1917. It is also unlike *American National Co. v. United States,* 274 U.S. 99, 47 S.Ct. 520, 71 L.Ed. 946. There, the bonus contract provided definitely for the payment of a fixed amount. It was *debitum in praesenti, solvendum in futuro.* The case at bar is in principle more like *Lewellyn v. Electric Reduction Co.,* 275 U.S. 243, 48 S.Ct. 63, 72 L.Ed. 262. [Footnote omitted.] [Emphasis supplied.] [*Id.* at 452, 50 S.Ct. at 204, 74 L.Ed. at 541.]

It should be noted that as shown above, the Court distinguished the *Anderson* case by saying that the tax in that case had confessedly accrued in 1916 and was a charge on the business of that year.

In *Brown v. Helvering,* 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725 (1934), an insurance agent attempted to deduct an amount from

his income tax representing estimated future cancellations of policies based on past year's experience. The Supreme Court disallowed the deduction on the ground that the liability was a contingent one and could not be accrued and deducted as expenses of the current year. The Court held:

> These charges on account of credits to the "Return Commission" reserve account are claimed as deductions on the ground that they are expenses "incurred," "during the taxable year." It is true that where a liability has "accrued during the taxable year" it may be treated as an expense incurred; and hence as the basis for a deduction, although payment is not presently due, *United States v. Anderson,* 269 U.S. 422, 440, 441, 46 S.Ct. 131, 70 L.Ed. 347; *American National Co. v. United States,* 274 U.S. 99, 47 S.Ct. 520, 71 L.Ed. 946; *Aluminum Castings Co. v. Routzahn,* 282 U.S. 92, 51 S.Ct. 11, 75 L.Ed. 234; and although the amount of the liability has not been definitely ascertained. *United States v. Anderson, supra.* Compare *Continental Tie & Lumber Co. v. United States,* 286 U.S. 290, 296, 52 S.Ct. 529, 76 L.Ed. 1111. But no liability accrues during the taxable year on account of cancellations which it is expected may occur in future years, since the events necessary to create the liability do not occur during the taxable year. *Except as otherwise specifically provided by statute, a liability does not accrue as long as it remains contingent. Weiss v. Wiener,* 279 U.S. 333, 335, 49 S.Ct. 337, 73 L.Ed. 720; *Lucas v. American Code Co.,* 280 U.S. 445, 450, 452, 50 S.Ct. 202, 74 L.Ed. 538; compare *New York Life Ins. Co. v. Edwards,* 271 U.S. 109, 116, 46 S.Ct. 436, 70 L.Ed. 859; *Ewing Thomas Co. v. McCaughn,* 43 F.2d 503; *Highland Milk Condensing Co. v. Phillips,* 34 F.2d 777.

The *liability* of Edward Brown & Sons arising from expected future concellations [sic] *was not deductible* from gross income *because it was not fixed and absolute.* * * * [Emphasis supplied.] [*Id.* at 200–01, 54 S.Ct. at 360, 78 L.Ed. at 731.] [Footnote omitted.]

Again in *Dixie Pine Co. v. Commissioner of Internal Revenue,* 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270 (1944), the Supreme Court denied an accrual taxpayer the right to deduct taxes in a current year because the liability for the taxes was *contingent.* The Court held:

> * * * It has never been questioned that a taxpayer who accounts on the accrual basis may, and should, deduct from gross income a liability *which really accrues* in the taxable year. It has long been held that in order truly to reflect the income of a given year, all the events must occur in that year *which fix the amount and the fact of the taxpayer's liability* for items of indebtedness *deducted though not paid*; and *this cannot be the case where the liability is contingent* and is contested by the taxpayer. * * [Footnotes omitted.] [Emphasis supplied.] [*Id.* at 519, 64 S.Ct. at 365, 88 L.Ed. at 272.]

The Supreme Court again declared in *Security Flour Mills Co. v. Commissioner of Internal Revenue,* 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725 (1944) that a contingent liability for taxes could not be accrued and deducted in a current taxable year. There the Court said:

> It is settled by many decisions that a taxpayer may not accrue an expense the amount of which is unsettled *or the liability for which is contingent, and this principle is fully applicable to a tax,* liability for which the taxpayer denies, and payment whereof he is contesting. * * * [Footnote omitted.] [Emphasis supplied.] [*Id.* at 284, 64 S.Ct. at 597, 88 L.Ed. at 728.]

In that case, the Court compared the deduction of a contingent liability for taxes to an accrual taxpayer who has a lease for a period of years with the rental payable in installments over a series of years. In this regard, the Court said:

> * * * For example, a tenant would not be compelled to accrue, in the first year of a lease, the rental liability covering the entire term nor would he be permitted, if he saw fit to pay all the rent in

advance, to deduct the whole payment as an expense of the current year. * * * [*Id.* at 285, 64 S.Ct. at 598, 88 L.Ed. at 729.]

It is obvious that such accrual could not be allowed because the rental liability for the succeeding years is not an obligation that is fixed and owing by the taxpayer until "the event" (rental due date) fixing liability for the rent on the taxpayer has occurred. Kodak is in exactly the same situation in the case before us. Until the event (payment of wages) occurs, Kodak has no liability or obligation to pay the taxes and cannot accrue them in advance. The taxpayer here argues that it will have to pay the taxes or else breach its contract with its employees to pay their wages. This is unpersuasive. Employers breach their contracts to pay employees' wages every day. That is what happened to the employer in *Otte.* He never paid the wages and for that reason never became liable for the taxes. While it is unlikely that a company as large and as responsible as Kodak would fail to pay wages due its employees, it is possible that this might happen due to circumstances beyond its control. If this happened, Kodak would never owe the taxes involved here. Therefore, it is inescapable that its liability for the taxes is contingent on its paying the wages, and this is the kind of contingent liability that the Supreme Court has held repeatedly cannot be accrued and deducted in the current year.

In the *Security Mills* case, the Supreme Court stated further:

The rationale of the system is this: "It is the essence of any system of taxation that it should produce revenue ascertainable, and payable to the government, at regular intervals. Only by such a system is it practicable to produce a regular flow of income and apply methods of accounting, assessment, and collection capable of practical operation."

This legal principle has often been stated and applied. The uniform result has been denial both to Government and to taxpayer of the privilege of allocating income or outgo to a year other than the year of actual receipt or payment, or, applying the accrual basis, the year in which the right to receive, *or the obligation to pay, has become final and definite in amount.* [Footnotes omitted.] [Emphasis supplied.] [*Id.* at 286–87, 64 S.Ct. at 598, 88 L.Ed. at 729.]

The holdings of the Court in the *Dixie Pine* and *Security Mills* cases were quoted with approval by the Supreme Court in *United States v. Consolidated Edison Co.,* 366 U.S. 380, 81 S.Ct. 1326, 6 L.Ed.2d 356 (1961). (See footnotes 6 and 7 at 385–86, 81 S.Ct. at 1330, 6 L.Ed.2d at 360–61.)

One of the most comprehensive and case-supported statements to be found that contingent liabilities cannot be accrued and deducted by an accrual taxpayer is set forth in an opinion by the Third Circuit Court of Appeals in the case of *ABKCO Industries, Inc. v. Commissioner of Internal Revenue,* 482 F.2d 150 (3d Cir. 1973). The case involved an attempt by a taxpayer to accrue and deduct royalties he claimed a contract required him to pay a performing artist, even though the royalties were not paid. The court held against the taxpayer saying the liability was contingent and could not be accrued for deduction purposes. The statement and decision of the court, in pertinent part, is as follows:

Sections 446(a) and (c) of the Internal Revenue Code of 1954 authorize an accrual basis taxpayer to deduct an obligation in the taxable year in which *all the events have occurred which are necessary to establish the fact of liability and the amount thereof* with reasonable accuracy. See Treas.Reg. § 1.446–1(c)(1)(ii). The Commissioner and the Tax Court rely upon the settled principle that a taxpayer using the accrual method of accounting may not deduct any liability *until the contingencies relating to such liability are removed. Security Mills Co. v. Commissioner [of Internal Revenue],* 321 U.S. 281, 284, 64 S.Ct. 596, 88 L.Ed. 725 (1944); *Dixie Pine Co. v. Commissioner [of Internal Revenue],* 320 U.S. 516, 518–519, 64 S.Ct. 364, 88 L.Ed. 270 (1944); *Lucas v. American Code Co.,* 280 U.S. 445, 449–

451, 50 S.Ct. 202, 74 L.Ed. 538 (1930); *American National Co. v. United States,* 274 U.S. 99, 104–105, 47 S.Ct. 520, 71 L.Ed. 946 (1927); *United States v. Anderson,* 269 U.S. 422, 440–441, 46 S.Ct. 131, 70 L.Ed. 347 (1926); *Lustman v. Commissioner [of Internal Revenue],* 322 F.2d 253, 258 (3d Cir. 1963); *Noxon Chemical Products Co. v. Commissioner,* 78 F.2d 871 (3d Cir. 1935). *These cases hold that if all the events necessary to establish the fact of liability have not occurred, the liability is "contingent" and may not be accrued for purposes of deduction.* \* \* . [Emphasis supplied.] [*Id.* at 151.]

Judge Hastie, in his concurring opinion in that case, stated:

> \* \* \* [T]he items deducted by the taxpayer as fixed accrued liabilities of the taxable years were only *contingent obligations* of undeterminable amount until some subsequent time. [Emphasis supplied.] [*Id.* at 156.]

The court also held that the determination of whether the events necessary to establish the fact of liability (the all events test) is a question of law rather than a question of fact. This appears to be correct.

There can be no doubt that a review of the above decisions show beyond any question that a contingent liability such as Kodak had in 1964 for the taxes in the instant case could not be accrued nor deducted in that year when the wages had not been paid and no liability whatever existed for the taxes until and unless the wages were paid. The majority errs in holding to the contrary, because the cited authorities show conclusively that the all events test had not been met as to this contingent tax liability.

In addition to the foregoing cases holding that contingent liabilities cannot be accrued or deducted by an accrual taxpayer in a current year, there are other cases that hold that where the taxpayer has no obligation or liability to pay an expense in a current year, such as Kodak here, he cannot accrue or deduct the expense in a current year

because the all events test has not been met. Some of these cases will be discussed below.

In *Lucas v. Ox Fibre Brush Co.,* 281 U.S. 115, 50 S.Ct. 273, 74 L.Ed. 733 (1930), the board of directors of an accrual basis company voted in 1920 to pay each of its officers $24,000 as extra pay for "past services." The money was paid in 1920 and accrued and deducted the same year. The Government contended it should have been accrued and deducted in prior years since it was for services rendered in prior years. The Supreme Court held for the taxpayer on the ground that the payments were actually incurred and made in 1920 and "there was no prior agreement *or legal obligation* to pay the additional compensation." [3] [*Id.* at 119, 50 S.Ct. at 274, 74 L.Ed. at 736, emphasis supplied.] The Court held:

> This section [Section 212(b) of the Revenue Act of 1918] relates to the method of accounting; the Commissioner may make the computation on a basis that does clearly reflect the income, if the method employed by the taxpayer does not. But this section does not justify the Commissioner in allocating to previous years a reasonable allowance as compensation for services actually rendered, *when the compensation was properly paid during the taxable year and the obligation to pay was incurred during that year and not previously.* In the present instance, the expense could not be attributed to earlier years, for *it was neither paid nor incurred in those years. There was no earlier accrual of liability.* It was deductible in the year 1920 or not at all. Being deductible as a reasonable payment, there was no authority vested in the Commissioner to disregard the actual transaction and to readjust the income on another basis which did not respond to the facts. [*Id.* at 120, 50 S.Ct. at 274, 74 L.Ed. at 736.] [Emphasis supplied.]

In that case, the Supreme Court refused to follow the *Anderson* case relied on by Kodak in the instant case, saying:

---

3. *See Seabright Woven Felt Co. v. Ham,* 38 F.2d 114 (D.Maine 1930), for a similar case.

The case of *United States v. Anderson,* 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347, is not in point, as *there the liability for the munitions tax at a fixed rate had accrued in the earlier year (1916) and was a charge on the business of that year,* although the precise amount was ascertained and was payable in 1917. In *American National Company v. United States,* 274 U.S. 99, 47 S.Ct. 520, 71 L.Ed. 946, *there was a contract providing definitely for the payment.* Compare *Lucas, as Commissioner of Internal Revenue v. American Code Company,* 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538. [*Id.* at 120–21, 50 S.Ct. at 275, 74 L.Ed. at 734.] [Emphasis supplied.]

It should be clear from the above statement of the Supreme Court, as well as by statements of the Court in other cases and by other courts where the *Anderson* case is cited, that in *Anderson,* where the all events test was first announced, there was a definite, fixed, and positive liability and obligation for the munitions tax on the company in 1916 that was a charge on its business for that year. By contrast, in the case before us, there was no liability or obligation whatever on Kodak in 1964 for the withholding taxes on the unpaid wages of its employees. It is clear that the *Anderson* case is of no help to Kodak. It could be stated, as the Supreme Court did in the above case, that *Anderson* is not in point in our case.

The case of *Bauer Bros. Co. v. Commissioner of Internal Revenue,* 46 F.2d 874 (6th Cir. 1931), *cert. denied,* 283 U.S. 850, 51 S.Ct. 560, 75 L.Ed. 1458, was another case where a taxpayer gave bonuses to its employees in 1919 for services rendered in 1918 and accrued the amounts in 1918. There was no prior legal obligation to pay the bonuses for the 1918 services. The court held that since there was no legal obligation in the taxable year of 1918 for the taxpayer to pay the bonuses, it could not accrue them in that year, but had to accrue them in 1919 when authorized and paid. The court said:

* * * [T]he only question presented is whether they were incurred in 1918 with-

in the meaning of the statute. Our first concern is with the sense in which the term "incurred" is used in section 234. It seems not to be disputed here that *expenses are incurred only when there is an agreement or a legal obligation to pay them within the taxable year.* Indeed, that seems to be the view taken of the very language of this section by the Supreme Court of the United States in *Lucas, Commissioner of Internal Revenue v. Ox Fibre Brush Co.,* 281 U.S. 115, 50 S.Ct. 273, 74 L.Ed. 773.

\* \* \* \* \* \*

It will therefore be observed that, whether the term "incurred" as used in the Revenue Act of 1918 is used in a technical legal sense or in an economic or bookkeeping sense, *the expenses are not incurred unless there has arisen a legal obligation to pay them, and they do not accrue within a given taxable year unless all of the events which fix the amount and determine the liability of the taxpayer to pay occur within that year.* \* \* \* [*Id.* at 875–76.] [Emphasis supplied.]

The holding in *Bauer Bros.* set forth above was quoted with approval by the Eighth Circuit Court of Appeals in *Stern-Slegman-Prins Co. v. Commissioner of Internal Revenue,* 79 F.2d 289 (8th Cir. 1935). In that case corporate officers had made donations from their salaries to the paid-ins surplus of the corporation. The donations were accrued as a liability of the corporation during the taxable year the donations were made. The court held that this could not be done as the corporation had no liability or obligation to repay the donations to its officers and the expense was accordingly not incurred. The court said:

* * * After these proceedings, all occurring within the taxable years involved, *there was not liability or obligation on the part of the corporation to pay the questioned amounts to its officers, and it did not in fact pay them. The expense was therefore not incurred. Bauer Bros. Co. v. Commissioner of Internal Revenue* (C.C.A. 6) 46 F.2d 874, 875; *Skinner Mfg. Co. v. United States* (Ct.Cl.) 8 F.Supp.

741, 745; *Desco Corporation v. United States* (D.C.) 55 F.2d 411. [*Id.* at 291.] [Emphasis supplied.]

The same result should be reached in the instant case because Kodak had no liability or obligation in 1964 to pay the taxes and in fact did not pay them, and, therefore, the tax expense was not incurred and could not be accrued nor deducted in that year.

In *C. A. Durr Packing Co. v. Shaughnessy,* 81 F.Supp. 33 (N.D.N.Y.1948) the court explained the meaning of the *Anderson* case as follows:

The case of *United States v. Anderson,* 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347 is repeatedly urged as an authority holding that when all of the events have occurred which fixed the amount of the tax and determined the liability of the taxpayer to pay, then it may be said that the liability therefor has accrued. *This rather broad rule seems to have been limited in its application to such claims or liabilities which are reasonably certain in fact,* and ascertainable in amount. *Lucas v. American Code Co.,* 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010. "It is settled by many decisions that *a taxpayer may not accrue an expense the amount of which is unsettled or the liability for which is contingent * * *.*" *Security Flour Mills Co. v. Commissioner,* 321 U.S. 281, at page 284, 64 S.Ct. 596, at page 597, 88 L.Ed. 725. *"The requirement of valuation comprehends the element of collectibility."* *Helvering v. Enright's Estate,* 312 U.S. 636, 61 S.Ct. 777, 782, 85 L.Ed. 1093.

From the above authorities it appears that a claim may be accrued by a taxpayer for tax purposes when, (a), all of the events have occurred, *which fix the amount of the claim and determine the question of* liability; (b), the amount is readily ascertainable; (c), *the liability therefor is determined rather than contingent.* [*Id.* at 35.] [Emphasis supplied.]

The holding of the court as set forth above was quoted with approval in *Driscoll*

*Bros. & Co. v. United States,* 221 F.Supp. 603 (N.D.N.Y.1963).

The decision of the court in *Spencer, White & Prentis, Inc. v. Commissioner of Internal Revenue,* 144 F.2d 45 (2d Cir. 1944), *cert. denied,* 323 U.S. 780, 65 S.Ct. 269, 89 L.Ed. 623, is dispositive of the instant case against the contentions of Kodak and literally destroys its position. In that case the accrual taxpayer was a contractor who accrued in a current year estimated expenses for work to finish a contract yet to be performed in a future taxable year. The deduction was disallowed. The court said:

* * * But the fact that payments would have to be made by the taxpayer in a future year for work which had not been done in the year in question did not give rise to a proper tax deduction. *It is argued that it did give rise to such a deduction because a liability existed to perform the work during that year.* This theory, however, proves too much, for under it a taxpayer on the accrual basis could estimate the entire gross income which might be received from his contract, though no work had been begun, could deduct the estimated expense of performance and could compute the taxes accordingly. * * *

The difficulty with the taxpayer's claim is that it ignores the fact that our income tax law is based upon annual periods of computation and that it seeks to have the taxes computed under a system which Justice Roberts, in *Security Flour Mills Co. v. Commissioner [of Internal Revenue],* 321 U.S. 281, 287, 64 S.Ct. 596, 599, termed "partly annual and partly transactional." In *Dixie Pine Products Co. v. Commissioner [of Internal Revenue],* 320 U.S. 516, 519, 64 S.Ct. 364, 365, the same Justice said: "It has never been questioned that *a taxpayer who accounts on an accrual basis may,* and should, *deduct from gross income a liability which really accrues in the taxable year.* It has long been held that, in order truly to reflect the income of a given year, *all the events must occur in that year which fix the amount and the fact of the taxpayer's*

*liability for items of indebtedness deducted though not paid; \* \* \*. The liability for the estimated deduction clearly had not accrued during the year in which deduction was sought. The only thing which had accrued was the obligation to do the work which might result in the estimated indebtedness after the work was performed.*

It is well settled that deductions may only be taken for the year in which the taxpayer's liability to pay becomes definite and certain, even though the transactions (such as the contract in the present case) which occasioned the liability, may have taken place in an earlier year. *Brown v. Helvering,* 291 U.S. 193, 54 S.Ct. 356, 78 L.Ed. 725; *American Hotels Corp. v. Commissioner [of Internal Revenue],* 2 Cir., 134 F.2d 817; *Amalgamated Housing Corp. v. Commissioner [of Internal Revenue],* 37 B.T.A. 817, affirmed 2 Cir., 108 F.2d 1010; cf. *Security Flour Mills Co. v. Commissioner,* 321 U.S. 281, 287, 64 S.Ct. 596; *Burnet v. Sanford & Brooks Co.,* 282 U.S. 359, 51 S.Ct. 150, 75 L.Ed. 383. Here the work for which the deduction is sought was unperformed and its cost was, as we have already indicated, no more than a fair estimate. *Such a deduction as the taxpayer seeks had not accrued "during the taxable year,"* and, therefore, did not meet the requirements of Section 23(a) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Code, § 23(a).

*The petitioner's reliance upon United States v. Anderson,* 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347, *is misplaced.* There the deduction of certain estimated tax liabilities set up in a reserve entered on the taxpayer's books in accordance with a Treasury Regulation was allowed, though the taxes had not been assessed. But *all the events had occurred which determined the liability to pay the tax. Here liability for the work done after July 1, 1938, had not been incurred for the work had not been performed.* Cf. *Lucas v. American Code Co.,* 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010. [*Id.* at 46–47.] [Emphasis supplied.]

Although the facts are different in that case to those in the case before us, the fundamental principles of law are the same in the two cases. It will be noted that in *Spencer* the contractor claimed the right to make the deduction of future expenses because he was obligated by contract in the current year to finish the work in a future taxable year when he would have to pay the expenses. That is the same argument made by Kodak in our case, namely, that it was obligated in 1964 to pay the wages to the employees in 1965 and by reason of that fact it would have to pay the taxes in 1965. The court in *Spencer* held that such an argument was not valid because "*the only thing which had accrued was the obligation to do the work which might result in the estimated indebtedness after the work was performed.*" (Emphasis supplied.) In like manner, *in our case, the only thing that had accrued was the obligation to pay the wages,* which when paid in 1965 would create an obligation on Kodak to pay the taxes at that time. Neither the future contract expenses in *Spencer* nor the taxes in our case could be accrued until the liability for such expenses had been incurred in the taxable year when the deduction was made. The court in the *Spencer* case held in clear and unequivocal language that all events must occur in the year of deduction that fix the amount and *fact of liability* for the expenses deducted, and that a deduction may only be taken in the year in which the taxpayer's liability to pay becomes *definite and certain* even though the transaction which occasioned the liability (such as the agreement to pay wages in our case) may have taken place in an earlier year. Kodak simply cannot meet these requirements in the instant case. It is significant, too, that the court in *Spencer* held that the taxpayer's reliance on *Anderson* was misplaced because there all the events had occurred which determined (fixed, established, made certain and definite) the liability to pay the tax, but in *Spencer* the liability for the (future) work had not been incurred "for the work had not been performed." In our case, the liability to pay the tax had not been incurred in 1964 because the wages

had not been paid in that taxable year, just as the work had not been done in *Spencer* during the year of the deduction.

The majority surprisingly agrees in footnote 12 that if a liability is "contingent" the "all events" test fails of application. This is an admission that the taxpayer *cannot accrue a debt that it does not owe.* That is exactly the situation of the taxpayer in the instant case. This admission forecloses the case against the plaintiff and emphasizes that the majority opinion is clearly erroneous when it allows the plaintiff to accrue and deduct taxes it does not owe. The majority intimates that if the taxpayer knows "how much" his taxes will be if and when he owes them, he can accrue and deduct them even though he is not obligated or liable to pay them. This is nothing more nor less than allowing the taxpayer to accrue and deduct a contingent liability, which even the majority agrees cannot be done.

While the majority holds that Kodak may not accrue and deduct in 1964 the dividend-bonus payment and the vacation pay withholding taxes because the amount due is uncertain and the all events test is not complied with, is a correct result, the reasoning and theory of such decision is incorrect and contrary to law. The dividends and vacation pay were vested in the employees at the end of 1964, which is a circumstance that did not exist in *Union Pacific R.R. v. United States,* 208 Ct.Cl. ——, 524 F.2d 1343 (1975), relied on by the majority. The employees were entitled to the dividends and vacation pay on December 31, 1964, based on the wages they earned in 1964.[4] What happened to their wages in 1965 is immaterial, as we are only concerned with wages earned in 1964. Yet the majority says that the dividends and vacation pay taxes cannot be accurately determined on December 31, 1964, because the employees might get a raise in salary in 1965. It is difficult to understand how a raise in wages in 1965 could affect the taxes on wages for 1964. The statutes fixing limits on wages with reference to FICA and FUTA taxes are Sections 3121 and 3306 of the Code. Section 3121 places a ceiling on wages of $4,800, with respect to employment *paid* to an individual by an employer *during a calendar year,* above which amount FICA taxes would not be paid on the salary. Section 3306 places the same limitation with respect to FUTA taxes, except the ceiling is $3,000 *paid during any calendar year.* The calendar year involved in this case is 1964 and the FICA and FUTA taxes must be calculated on the basis of wages, etc., paid or incurred during that year. What happened in 1965 with respect to the wages was immaterial. Besides any possible increase in wages in 1965, as suggested by the majority is wholly speculative and without any facts to support the theory.

Furthermore, the decision of the majority in this regard is in error for the additional reason that it indicates that the taxes for the dividends and vacation pay could be accrued and deducted in 1964 were it not for the possibility that the wages might be increased in 1965. This is contrary to all of the statutes, regulations, and decided cases cited above, because Kodak had no liability or obligation to pay the taxes on the dividend or vacation pay in 1964, and, therefore, could not accrue nor deduct such taxes in that year. Also, the possibility of an increase in salary in 1965 was not raised by the parties, was not briefed nor argued, and is a wholly speculative theory advanced by the majority. In any event, an increase in salary in 1965 could have no effect on the contingent liability of Kodak for withholding taxes on wages for 1964 as and when the wages for 1964 were paid by Kodak.

V

Conclusion

For all of the reasons stated above, I would enter judgment for the defendant

---

4. Vacation pay and bonuses are wages. See Sec. 3306(b) in footnote 1 and *United States v. Munro-Van Helms Co.,* 243 F.2d 10, 13 (5th Cir. 1957) and 6 Remington on Bankruptcy, 382, Sec. 2807.

and deny the plaintiff the right to accrue and deduct the involved taxes in 1964 on the unpaid wages, dividends and vacation pay earned by its employees as of the end of that year. I agree that the case should be remanded to the trial judge for further proceedings to determine the extent to which, if any, the deficiency assessment effected what amounts to a double disallowance of the same payroll tax items for purposes of computing the taxpayer's 1964 taxable income, which issue was severed by the trial judge pending the decision of the case by the court.