GUNDERSON BROS. ENGINEERING CORP., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19672. Promulgated January 18, 1951.

*Carl E. Davidson*, *Esq.*, and *Burton M. Smith*, *C. P. A.*, for the petitioner.

*John H. Pigg*, *Esq.*, for the respondent.

122

124

## OPINION.

ARUNDELL, *Judge:* The sole issue in regard to the petitioner's tax liability for the fiscal year ended May 31, 1944, concerns the amount petitioner may properly accrue and deduct for Oregon corporation excise taxes in that year. Respondent concedes that the petitioner is entitled to deduct the sum of $20,965.01 which represents the tax originally reported by the petitioner in its state tax return and the amount claimed by the petitioner as a deduction in its Federal tax returns

for that year. Petitioner, on the other hand, contends that it is entitled to accrue and deduct the amount of $26,040.49 representing the total tax as disclosed in an amended state tax return which it filed on or about November 30, 1946.

Petitioner concedes that the additional state excise tax of $5,075.48 results from the elimination of the deduction for "Post-war Reconversion Expense" in the amount of $253,774.13 claimed in its Oregon corporation excise tax return as originally filed, and agrees with the respondent that the issue herein is governed by the so-called "contested tax" rule. See *Dixie Pine Products Co.* v. *Commissioner*, 320 U. S. 516; *Security Flour Mills Co.* v. *Commissioner*, 321 U. S. 281. The parties differ as to whether petitioner's claim of the deduction for post-war reconversion expense on its Oregon excise tax return, in the face of advice to it that this item was not properly deductible, constituted a "contest" of its liability for the additional tax which would otherwise have been due.

The right to accrue a liability for tax comes with the occurrence of all the events which fix the amount of the tax and determine the liability of the taxpayer to pay it. *United States* v. *Anderson*, 269 U. S. 422; see G. C. M. No. 25298, 1947-2 C. B. 39. In cases involving taxpayers who contest the imposition of a tax by court action, it has been consistently held that the right to accrue such expense must be postponed until such time as the taxpayer's liability for the tax and the amount thereof has been finally determined. *Dixie Pine Products Co.* v. *Commissioner, supra; Security Flour Mills Co.* v. *Commissioner, supra.* However, it is not necessary that a taxpayer institute legal proceedings in order to "contest" his liability for a tax. In *Great Island Holding Corp.*, 5 T. C. 150, 160, we stated that:

We do not agree with petitioner's contention that the "contested tax" rule is applicable only in cases where the dispute has been carried to the courts. In our view, it is sufficient if the taxpayer does not accrue the items on its books and denies its liability therefor.

The petitioner herein did not accrue the tax in question on its books, nor can it fairly take the position that it did not deny its liability for any additional tax when it claimed the benefit of the deduction for post-war reconversion expense. The additional tax which petitioner now seeks to accrue and deduct in the fiscal year 1944 was not the result of innocent error or oversight on the part of the petitioner but was the direct result of its deliberate and affirmative claim to a deduction in the amount of $253,774.13. The petitioner, with clarity and in all apparent sincerity, claimed the deduction on its state tax return, which had the practical effect of denying tax liability in any greater amount than reported. It is of no moment now to learn that petitioner's officers had been forewarned as to the unlawfulness of the deduction

or that they were unwilling to press the claim should it be disallowed, for these facts were in no manner reflected on the returns. The important considerations are that the deduction and the resulting lower tax were in fact claimed and that at no time prior to the filing of its amended return on November 30, 1946, did the petitioner in any manner recognize or concede its liability for taxes in any greater amount than originally reported and paid.

Therefore, it is our opinion that the petitioner is not entitled to accrue and deduct in computing its net taxable income for the fiscal year ended May 31, 1944, the additional tax in the amount of $5,075.48 which it admitted as owing for the first time on its amended return filed in 1946.

The parties state that our decision on the first issue is determinative of the second issue relating to petitioner's claim that it is entitled to a deduction for the fiscal year ended May 31, 1945, in the amount of $8,901.89 representing interest on deficiencies in Federal income and excess profits tax for the fiscal year ended May 31, 1944, arising out of the respondent's disallowance of the same deduction of $253,774.13 for post-war reconversion expense which petitioner claimed on its Federal tax returns for the latter year. We agree. It is clear the petitioner did not accrue this interest expense on its books during the fiscal year ended May 31, 1945, and there is no evidence that it had at any time in that year recognized or conceded its liability for the deficiencies in tax and the interest which were ultimately determined by the respondent in respect to the petitioner's tax liability for the fiscal year ended May 31, 1944. For the reasons we have discussed above, we are of the opinion that petitioner is not entitled to accrue and deduct interest expense of $8,901.89 in the fiscal year ended May 31, 1945. *Lehigh Valley Railroad Co.*, 12 T. C. 977, 1000.

The principal issue herein relates to the correctness of the petitioner's reported closing inventory for the fiscal year ended May 31, 1945. Petitioner purported to value its closing inventory at cost or market, whichever was lower, and reported a closing inventory of $1,060,289.05 as of May 31, 1945, including therein "Work in Progress" on the uncompleted vessels covered by Contracts 1847 and 1964 at a "market" value of $41,857 and zero, respectively, whereas the actual cost of the materials and labor expended by the petitioner on such contracts totaled $196,887.44 and $177,388.33, respectively, as of May 31, 1945.

In the notice of deficiency respondent held that the market value of such "Work in Progress" was not less than the actual cost of the materials and labor expended, and accordingly increased the petitioner's closing inventory and thereby its net income by the amount of $332,418.77.

The statute directly grants to the Commissioner the responsibility and the authority for determining the need and the methods to be followed for the taxpayer's use of inventories in determining income for Federal tax purposes. Section 22 (c), Internal Revenue Code. Pursuant to this authority, the Commissioner, in Regulations 111, section 29.22 (c)ᵣ1, has held that inventories are necessary in every business where the production, purchase, or sale of merchandise is an income-producing factor and that such inventories shall include finished goods, partially finished goods, and raw materials and supplies which have been acquired for sale or which will physicallly become a part of merchandise intended for sale.

However, the Commissioner's regulations provide that "Merchandise shall be included in the inventory only if title thereto is vested in the taxpayer." There is nothing novel about the Commissioner's requirement that a taxpayer hold title to the merchandise he seeks to inventory as this position is generally supported by the recognized authorities on accounting. See Accountant's Handbook, Second Edition, page 451, and Third Edition, pages 551–552, 558; Principles of Accounting, Third Edition, by H. A. Finney, ch. 15, page 250; Mertens, Law of Federal Income Taxation, Vol. 2, ch. 16, section 16.26, page 544, and cases cited therein.

By the express terms of Contracts 1847 and 1964, petitioner had no title to the materials supplied by the Government for use in the construction of the harbor tugs and lighters, and for that matter during the process of construction had no title in the materials or equipment it acquired for installation in the vessels. Under these circumstances it was appropriate that the contracts provided that the petitioner was prohibited from insuring the vessels, or any of the materials or equipment used in the construction thereof. Moreover, the contract was nonassignable by the petitioner. Thus, it is clear that the petitioner held no title or interest in the vessels, materials or equipment as such, nor did it possess any product which it could sell in its own right at any stage of completion.

In our opinion, the interest of petitioner in the vessels and the materials and equipment consisted of nothing more than a contractual right to receive a fixed fee for carrying out the construction of the vessels in the manner specified in the contracts. The petitioner's contractual interest was not the equivalent of title to and ownership of finished goods, partially finished goods, or raw materials, and in our opinion for that reason did not constitute property of a nature includible in inventories as contemplated by the Commissioner in his Regulations, and the accounting authorities in their discussions of accepted inventory practices.

Moreover, it was not until the petitioner concluded that it would probably incur losses upon completion of Contracts 1847 and 1964 in

the following taxable year that it undertook to anticipate such losses by inventorying its "work and progress" under the contracts at a "market" figure which was $332,418.77 less than the actual costs.

Petitioner entered into both contracts shortly after the beginning of the fiscal year ended May 31, 1945, and during that year completed three of the ten lighters covered by Contract 1964. In its Federal tax returns, petitioner for that year included in its gross income $122,025 representing the contract price of the three completed lighters, and in its costs the sum of $160,709.29 representing the actual cost of materials and labor expended in the construction of the three lighters completed and delivered during that year. Under the terms of the contract, petitioner was entitled to receive partial payments aggregating $119,619 and $58,492.50 on account of the five tugs and the seven lighters, respectively, which were not completed during the fiscal year ended May 31, 1945. However, these partial payments were not included by petitioner in its gross income for that year but were recorded as "customer deposits" on petitioner's books and treated as deferred income on its tax returns.

It may well be that had the petitioner chosen to report its income from these contracts on the so-called percentage of completion basis and had discovered that the costs incurred in connection with the contracts were running ahead of receipts, it could have accrued and deducted the loss reflected thereby as of the close of its taxable year. However, petitioner did not choose to employ the percentage of completion basis. Instead, it appears from the petitioner's method of handling the income and costs attributable to the three lighters completed in the fiscal year 1944 and the testimony of its accountant that petitioner elected to defer its income and costs until the various units covered by the contracts were completed and delivered, at which time it would take into income the contract price of the completed unit and include in its costs the portion of the total contract costs allocable to the completed unit.

The sole purpose of petitioner's including the materials and labor supplied under Contracts 1847 and 1964 in its closing inventory for the fiscal year 1945 at a nominal "market" value rather than cost was to record during the fiscal year ending May 31, 1945, the loss it expected to incur on the contracts in the following taxable year. Recognition of the device employed by the petitioner would be clearly violative of the long established rule that the revenue laws only permit the deduction of realized losses and not anticipated losses. *Weiss* v. *Wiener*, 279 U. S. 333; *Lucas* v. *American Code Co.*, 280 U. S. 445. This rule applies with equal effect to those taxpayers properly employing inventories. *Ewing Thomas Converting Co.* v. *McCaughn*, 43 Fed. (2d) 503, certiorari denied, 282 U. S. 897; *Adams-Roth Baking Co.*, 8 B. T. A. 458; *Higginbotham-Bailey-Logan Co.*, 8 B. T. A. 566.

Therefore, we conclude that the Commissioner did not err in determining that there should be restored to the petitioner's income for the fiscal year ended May 31, 1945, the sum of $332,418.77, representing the petitioner's write-off in that year of unrealized losses which it expected to incur in connection with Contracts 1847 and 1964 in the following taxable year. Various adjustments which the parties have agreed to will be given effect under Rule 50.

*Decision will be entered under Rule 50.*