**WOODMONT TERRACE, INC.**
v.
**UNITED STATES of America.**
Civ. No. 3515.

United States District Court
M. D. Tennessee,
Nashville Division.

Nov. 17, 1966.

James L. Roberts, Farris, Evans & Evans, Nashville, Tenn., for plaintiff.

Gilbert Merritt, U. S. Atty., Nashville, Tenn., and H. S. Little, Tax Div., Dept. of Justice, Washington, D. C., for defendant.

MEMORANDUM

FRANK GRAY, Jr., District Judge.

This civil action was instituted by Woodmont Terrace, Inc. (hereinafter called plaintiff) against the United States of America (hereinafter called defendant) for recovery of an alleged overpayment of federal corporate income taxes. It is now before the court on the motions of both parties for summary judgment.

Plaintiff was at all times relevant to this controversy a Tennessee corporation with its principal place of business in Nashville, Tennessee, and was engaged in the activity of holding property for rental purposes. Plaintiff employed the accrual method of accounting and reported its operations on a calendar-year basis.

At a November 14, 1960, meeting of plaintiff's stockholders, they unanimously adopted a plan of liquidation, pursuant to the provisions of § 337 of the Internal Revenue Code, 26 U.S.C. § 337, such plan to be finally consummated within twelve months. The officers and directors were instructed to effect the plan immediately, including the sale of assets, payment of all obligations, and delivery of the balance to stockholders. At a December 28, 1960, meeting the stockholders unanimously adopted a resolution which stated that pursuant to the above plan of liquidation the corporation's assets had been sold, and it was no longer a going concern. It was further decided to surrender the corporate charter so that the liquidation could be completed as soon as possible. Plaintiff proceeded with its liquidation, and the remaining assets of the corporation, a $450,000 first mortgage real estate installment note, was transferred to the Trust Department of the Third National Bank of Nashville, as liquidating agent.

On December 28, 1960, plaintiff filed with the Department of Revenue of the State of Tennessee a franchise and excise tax return for the calendar year ended December 31, 1960. That return showed $1,143.83 owed by the plaintiff to the State, and that same amount was claimed as a deduction by plaintiff on its 1960 federal income tax return. The corporate charter was surrendered on December 28, 1960, and as of that date all

of the corporation's assets had been distributed to the stockholders, except a cash balance of $4,720.81, which was equivalent to the amount of tax due according to the federal income tax return filed by plaintiff with the District Director of Internal Revenue in Nashville, Tennessee, on January 9, 1961.

On January 16, 1961, the Department of Revenue of the State of Tennessee wrote plaintiff, stating that there was a net deficiency of $5,232.06 in plaintiff's franchise and excise tax return for the year 1960. A statement of a "determination of deficiency" and a "tax bill," explaining the deficiency, were attached to the letter.

On or about February 2, 1961, Frank M. Farris, Jr., attorney for the plaintiff, went to the office of Mr. J. M. Dickinson, Director, Franchise and Excise Tax Division, and requested a conference with Mr. Dickinson and the Assistant Attorney General concerning the deficiency assessment. At this conference Mr. Farris, acting on behalf of plaintiff, assumed the position (1) that the capital gains from the sale of certain real estate were not ordinary operating profits and were not the type of net income contemplated by the Tennessee statute and therefore not subject to the tax, and (2) that the tax should not be imposed until the notes given in payment for the real estate have been paid, as no profit has been made until that time. The State took a contrary position and prevailed as to both contentions.

On or about March 3, 1961, stockholders of plaintiff refunded $5,241.90 in cash to cover the deficiency in the amount of $5,232.06, and additional insurance expense in the amount of $9.84. Also on March 3, 1961, Mr. J. W. Durrett (secretary-treasurer of plaintiff) made a telephone call to Mr. J. M. Dickinson, in which Mr. Durrett took issue with the way in which the deficiency had been computed. He specifically stated that the assessment did not take into consideration that the additional tax liability was a proper deduction in determining net income for franchise and excise

tax purposes. The State acquiesced to this objection, and on March 7, 1961, a letter was written from the Department of Revenue, State of Tennessee, to plaintiff, advising plaintiff that the assessment of January 16, 1961, was void, and the new and correct assessment was $4,933.89.

Based upon the additional assessment, on May 8, 1961, plaintiff filed with the United States District Director of Internal Revenue, an amended income tax return for the year 1960 and accompanied said return with a claim for a refund. By letter dated September 25, 1961, the District Director notified plaintiff that the claim was rejected and thirty days would be allowed for an appeal. Accordingly, on October 9, 1961, a protest of the Director's denial was filed, and on April 5, 1962, the Director notified plaintiff that the protest was also denied. As a result, on July 9, 1963, plaintiff instituted suit in this court for the amount of $1,483.12, with interest.

The government filed its answer on September 4, 1963, in which it admitted the facts to be substantially as set out in the complaint, but defendant denied that this set of facts entitled plaintiff to the relief sought. On May 27, 1964, defendant requested that plaintiff make certain admissions of fact, pursuant to Rule 36, Federal Rules of Civil Procedure, and also propounded certain interrogatories to be answered by plaintiff. Plaintiff filed its answers to these interrogatories and its answer to the request, on June 11, 1964. All requests for admissions were so admitted. On May 3, 1965, pursuant to notice of July 9, 1964, the defendant filed with the court the affidavit of H. Stennis Little, Jr., Department of Justice attorney, of Washington, D. C. Subsequently, motions for summary judgment were filed by both parties, a hearing had, and the motions taken under advisement.

First, it must be determined whether the fact that the additional taxes were not assessed until 1961 prevents their being considered as accrued in 1960, within the meaning of that term in the Internal

Revenue statutes. If it does not, was there a "contest" of the assessment which would, under decisions hereinafter cited, postpone the accrual and, therefore, the deductibility of such taxes to 1961.

It has been well settled for years that sound accounting principles require a matching of income and expense items if an accurate picture of a business's finances for any particular period is to be obtained. This is the basis principle of the accrual method of accounting. Therefore, a year, either calendar or fiscal, is adopted as the unit of time within which the matching will occur. Since in the instant case 1960 is the last year of operations for plaintiff, it is particularly interested in having these taxes declared an expense for that year.

In United States v. Anderson, 269 U.S. 422, 46 S.Ct. 131, 70 L.Ed. 347 (1926), the court established what has subsequently become known as the "all events" test for ascertaining whether an item of income or expense has "accrued." In *Anderson*, at p. 440, 46 S.Ct. at p. 134, the court said: "Only a word need be said with reference to the contention that the tax upon munitions manufactured and sold in 1916 did not accrue until 1917. In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. In this respect, for purposes of accounting and of ascertaining true income for a given accounting period, the munitions tax here in question did not stand on any different footing than other accrued expenses appearing on appellee's books." Thus it appears that the mere fact that an expense has not been actually assessed does not *ipso facto* mean that it has not accrued.

That the plaintiff was aware of an obligation to pay the Tennessee franchise and excise tax is evident by the fact that it did actually pay such taxes in the amount of $1,143.83 in 1960. In view of the fact that the plaintiff surrendered its corporate charter on December 28, 1960, it is difficult to imagine any additional "events" occurring which could have an effect on its obligation to pay franchise and excise taxes.

In Burton-Sutton Oil Co. v. Commissioner, 3 T.C. 1187 (1944), the taxpayer erroneously computed the amount of state franchise taxes due and paid that amount. In later years the error was discovered, and the taxpayer was assessed for the additional amount. The taxpayer then sought to recover the overpayment of federal income taxes occasioned by this error. The court said that the method for calculating the franchise tax was set by law, and in this case all the events pertaining to the tax had occurred in the prior year, and the mere fact that the taxpayer had made an error which caused the tax to be paid in a subsequent year would not prevent the accrual of the tax in the earlier year.

In Oregon Pulp and Paper Co. v. Commissioner, 47 BTA 772 (1942), the taxpayer had made certain errors in a depreciation account for the years 1933 and 1934. In 1935 the taxpayer discovered his error and voluntarily corrected it. This action resulted in a higher state excise tax for those years, and in 1935 he was assessed for the additional liability. Plaintiff paid the tax and filed for a refund of his previously paid federal income tax. The court said, "Petitioner erroneously computed the amount of its tax to the state, but this error would not alter the correct amount of the tax, nor petitioner's liability therefor. The subsequent discovery of the error and the collection thereof in 1936 related back to the taxable year in which the mistake occurred." Much to the same effect is Jack M. Chesbro v. Commissioner, 21 T.C. 123 (1953). In the absence of extraordinary circumstances the facts of the instant case would seem to satisfy the requirements of the "all events" rule as it is set forth in the above cases.

However, the "all events" rule has been modified to some extent from its

earliest form. This modification arose out of the holdings in Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 270 (1944) and Security Flour Mills Co. v. Commissioner, 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725 (1944). In *Security*, at p. 284, 64 S.Ct. at 597, the court said, "It is settled by many decisions that a taxpayer may not accrue an expense the amount of which is unsettled or the liability for which is contingent, and this principle is fully applicable to a tax, liability for which the taxpayer denies, and payment whereof he is contesting." (Citing *Dixie Pine Products*.)

Therefore, even though plaintiff has met the "all events" test, the decision still turns upon whether the actions of plaintiff, in talking with the State Director of the Franchise and Excise Tax Division and the Assistant Attorney General on February 2, 1961, and the further action of plaintiff on March 3, 1961, in calling attention to an assessment error of approximately $300, amounted to "contesting" the additional assessment. If it did, then the additional taxes assessed did not accrue in 1960 and would therefore not be deductible for that year.

As might be suspected the meaning of "contesting" is by no means clear after an examination of the cases. Some help is received from a reading of United States v. Consolidated Edison Co., 366 U.S. 380, 385, 81 S.Ct. 1326, 1330, 6 L.Ed. 2d 356 (1963), in which the court said, "The parties also recognize that this Court amplified, or as the Government says 'added a refinement to,' the 'all events' test by its holding, in Dixie Pine Products Co. v. Commissioner (US) supra, that an accrual-basis taxpayer could not, while 'contesting liability in the courts,' deduct 'the amount of the tax, on the theory that the state's exaction constituted a fixed and certain liability,' but 'must, in the circumstances, await the event of the *state court litigation* and might claim a deduction only for the taxable year in which its liability for the tax was finally adjudicated.' 320 U.S. at page 519, 64 S.Ct. at page 365. That

principle was specifically reaffirmed in Security Flour Mills Co. v. Commissioner, supra." [Emphasis added.] A good argument could be advanced, based upon the above language, that "contesting" means courtroom litigation or at least some formal mode of protest such as an administrative one.

At the other end of the spectrum is the viewpoint adopted by the Tax Court in several of its cases, e. g., Agency of Canadian Car and Foundry Co. v. Commissioner, 39 T.C. 15 (1962), and Gunderson Bros. Engineering Corp. v. Commissioner, 16 T.C. 118 (1951). The rule of those cases was that, by virtue of filing a state tax return for a specific amount, a taxpayer admitted his liability only for that specific sum and impliedly denied any additional liability. If an additional sum was subsequently assessed there was a "contest," and it could be resolved only when the taxpayer admitted his liability for the additional amount, and not until then could the additional assessment be said to accrue. This very argument was presented to the court in Dravo Corp. v. United States, 348 F.2d 542 (Ct.Cl.1965), to which the court responded, "We do not think it proper to extend the concept of 'contest' to the instant situation where the only basis for such an extension is taxpayer's subjective motive as to what was intended when a return was filed. If a departure from the traditional concepts of proper accrual tax accounting is required by the fact of contest [footnote to statute omitted], it should be evidenced by taxpayer's objective acts; i. e., *lodging a formal protest with the tax authorities or instituting a suit in a court of law*." [Emphasis added.] *Dravo* expresses what this court considers the better view of what amounts to a "contest." In a country where the entire tax structure is based on self-assessment, the mere submission of a return should not constitute a "contest" within the meaning given that word by the holdings in *Dixie Pine Products* and *Security Flour*.

With these principles in mind it must now be ascertained if the actions of the

plaintiff in the instant case justify a finding that plaintiff was contesting the additional assessment. Did the conference between plaintiff and the State authorities on February 2, 1961, amount to a "contest"? This was certainly not a part of any formal protest procedure provided for by the State. The Tennessee procedure for protesting a levy of this kind is to pay the tax and sue for its return. T.C.A. 67–2715. The conference was held before payment so that it could not amount to a part of the normal procedure for contesting the assessment. Plaintiff admits that at the conference it advanced two reasons why it did not feel that it was liable for the additional tax. Obviously plaintiff did not feel that it was liable since the additional amount was not included on its original return. But that a taxpayer is wrong about some of the underlying legal concepts of a tax seems insufficient reason to say that his case is to be treated differently than that of a taxpayer who had erroneously computed his tax. No doubt a taxpayer who had erroneously calculated his tax would want to be shown where and why he was wrong in his original return. That seems to be the situation in the instant case.

Plaintiff contends that it came away from the February conference convinced that the additional assessment was correct. This contention is supported by the fact that plaintiff, following that conference, notified all the stockholders of the additional liability and the appropriate amount to satisfy the obligation had been paid back in by the stockholders by March 3, 1961. Therefore, in the absence of any type of formal proceedings or a more obvious lack of acquiescence on the part of plaintiff, this court is of the opinion that the meeting of February 2 did not constitute the type of "contest" contemplated by *Dixie Pine Products*. As for the incident on March 3, which led to a lowering of the tax by approximately $300, plaintiff was merely apprising the State of an error in its computations, and that would certainly not amount to the required "contest."

Accordingly, the court holds that the additional franchise and excise taxes paid by plaintiff actually accrued in 1960 and were deductible as an expense on its 1960 federal income tax return.

An appropriate order will be submitted within fifteen days.