John D. HOLLINGSWORTH, Jr.

v.

The UNITED STATES.

Nos. 115–72, 283–74.

United States Court of Claims.

Dec. 14, 1977.

Randolph W. Thrower, Atlanta, Ga., Atty. of record, for plaintiff, Sutherland, Asbill & Brennan, Atlanta, Ga., of counsel.

Kenneth R. Boiarsky, Washington, D. C., for defendant, with whom was Asst. Atty. Gen. M. Carr Ferguson. Theodore D. Peyser and Donald H. Olson, Washington, D. C., of counsel.

Before LARAMORE, Senior Judge, KUNZIG and BENNETT, Judges.

## OPINION

PER CURIAM:

These cases come before the court on requests by both plaintiff and defendant, for review by the court of the recommended decision of Trial Judge Harry E. Wood, filed November 3, 1976, pursuant to Rule 54(a), on plaintiff's motion for summary judgment and defendant's cross-motion for partial summary judgment. Upon consideration thereof, together with the briefs and oral argument of counsel, since the court agrees with the trial judge's recommended decision, as hereinafter set forth,* it hereby affirms and adopts the decision with minor modifications (see footnotes 13 and 14) as the basis for its judgment in

---

* The necessary facts are stated in the opinion.

these cases. Therefore, in accordance with the decision, plaintiff's motion for summary judgment is granted in part and denied in part, defendant's opposition to plaintiff's motion for summary judgment on the ground that a material issue of fact exists is overruled and defendant's motion for partial summary judgment is denied in part and granted in part. Judgment is entered that plaintiff is entitled to recover and the case is referred to the trial division for further proceedings pursuant to Rule 131(c).

## OPINION OF TRIAL JUDGE

WOOD, Trial Judge:

In these consolidated cases, plaintiff sues for the recovery of asserted overpayments of federal income taxes for the calendar year 1962 in the amount of $894,732, and for the calendar year 1963 in the amount of $526,489,[1] together with interest thereon as provided by law.

Plaintiff's motion for summary judgment, and defendant's cross-motion for partial summary judgment, have been referred to the trial judge, pursuant to Rule 54(a), for his opinion and recommendation for the conclusion of law.

### I

Effective January 1, 1962, under circumstances to be described, plaintiff[2] was required by the Commissioner of Internal Revenue to change his method of accounting for business income from the cash receipts and disbursements method ("cash method") to the accrual method. In broad (if perhaps oversimplified) terms, plaintiff contends that in the circumstances of this case he is entitled to deductions, in the years 1962 and 1963, for state income tax deficiencies attributable to business income, and for interest on state and federal income tax deficiencies attributable to business income, determined in accordance with the accrual method of accounting, and not, as defendant insists, in later taxable years.

In opposing plaintiff's motion for summary judgment, defendant contends that "the presence of fraud in the submission of state and federal income tax returns constitutes a contest with respect to any later determined deficiencies, and interest thereon, relating to those returns"; that "a question of fact sufficient to require remand exists with respect to whether the state and federal returns filed by or on behalf of the taxpayer were fraudulent"; and that, accordingly, plaintiff's motion for summary judgment should be denied.

Defendant also contends, however, that it is entitled to partial summary judgment in any event, since, in defendant's view, plaintiff "contested" liability for substantial portions of state income tax deficiencies and interest thereon, and certain federal income tax deficiencies, in 1962 and 1963, thus rendering his liabilities for such state income tax deficiencies, and interest thereon, and for interest on such federal deficiencies, "contingent". Accordingly, defendant asserts, the "contested" liabilities plaintiff now seeks to accrue as deductions in those years may not be taken in 1962 or 1963, but rather must be deferred "until [later years, when] liability was either conceded or paid."

### II

The factual background out of which this litigation arises, as derived from the pleadings, exhibits, and affidavits of the parties,

1. The asserted 1962 overpayment does not include "interest erroneously assessed and paid thereon", while the asserted 1963 overpayment does include some $166,515 assessed and paid as interest.

2. Plaintiff and his former wife filed a joint federal income tax return for the year 1962. On July 18, 1975, the court allowed defendant's motion for leave to reserve the right to join plaintiff's former wife "as a party to this action to assert any interest she may have in the event that a recovery for the 1962 joint-return year in issue is in excess of the amounts which may be credited against joint tax liabilities for other years." While plaintiff did not object to allowance of defendant's said motion, he did respond that he saw "no foundation for Defendant's suggestion of further complexity of this sort in the case."

is lengthy, complex, strange, and fascinating. For present purposes, however, only those facts essential to resolution of the issues raised will be set forth herein.

For some years prior to, and during, the years 1962 and 1963, plaintiff operated, as a sole proprietorship, a textile machinery manufacturing, rebuilding, and repairing service located in Greenville, South Carolina. Beginning about 1959, largely as a result of plaintiff's development of a method of producing and applying an improved "metallic clothing" (a covering, or clothing, used in carding machines) to carding machine rolls, and of insuring that the improved metallic covering met the particular specifications and requirements of each textile mill that used it, plaintiff's theretofore relatively modest business grew rapidly in volume, becoming a large and profitable operation with annual receipts of millions of dollars.

For many years prior to 1959, plaintiff's former wife had served as office manager of the business, was in charge of keeping such books and records as were maintained by it,[3] handled its financial affairs, and prepared and filed its tax returns. Although plaintiff's former wife had had no formal training in accounting or finance, she continued, during the 1959–63 period, to serve as office manager, and was in charge of the administrative, financial, and accounting aspects of the business, including the preparation and filing of tax returns. Despite the rapid and considerable growth that occurred during the said period, no accounting, legal, banking, or other professional advice and assistance was obtained.

For the years 1960–62, plaintiff's former wife prepared and filed (and signed plaintiff's name to) joint federal and state income tax returns. Plaintiff and his former wife had begun to experience severe marital difficulties during those years, however,

and by the fall of 1963 their relationship had deteriorated to a critical point. Plaintiff's former wife ceased being active in the business in September 1963. In January 1964 they separated, and litigation, resulting in a divorce in 1969, was commenced. Plaintiff's separate 1963 federal and state income tax returns were prepared and filed by a certified public accountant.[4] Through 1963, the income from the operation of plaintiff's business was reported on all such returns on the cash method.

In May 1964, agents of the South Carolina Tax Commission ("Commission") began an investigation of plaintiff's income tax returns, and late in 1964, revenue and special agents of the Internal Revenue Service ("Service") also began an extensive investigation into such income tax returns. The state investigation related to the tax years 1959 through 1963; the federal investigation related to the tax years 1960 through 1963.

During the course of their respective investigations, both the state and the federal agents looking into plaintiff's income tax liability discovered (and plaintiff's representatives acknowledged) the presence of substantial inventories and accounts receivable.[5] Among other things, both the state and the federal agents also learned (and plaintiff's representatives also acknowledged) that plaintiff's business expenses had been substantially overstated for the years 1960 through 1962.

By letter dated February 26, 1965, the Commission proposed adjustments to plaintiff's state income tax liability, for the years 1959 through 1963, of (in round figures) $1,660,000, consisting of some $605,000 in taxes, $450,000 in interest, and a 100 percent fraud penalty. The principal bases for the proposed adjustments in taxes where a change of plaintiff's method of accounting from cash to accrual (which the

---

**3.** The business kept no books and records in the normal sense of those words.

**4.** Plaintiff also retained an attorney in 1964 in connection with the preparation and filing of his 1963 state and federal income tax returns.

**5.** Plaintiff's total inventory and accounts receivable for the years 1960–63 ranged (in round figures) from a low of $3,300,000 in 1960, to a high of $8,000,000 in 1963.

state proposed to make effective in 1959), and the disallowance of substantially overstated expense deductions claimed for the years 1960 through 1962.

In March 1965, plaintiff submitted a protest to the Commission with respect to the adjustments proposed by the Commission February 26, 1965. On May 31, 1965, the Commission held a hearing in the matter. The nature of plaintiff's protest, and its present significance, will be discussed hereinafter. Section V(A), *infra*. For present purposes, it suffices to state that by letter dated November 30, 1965, the Commission proposed adjustments to plaintiff's state income tax liability for the years 1959 through 1963 of (in round figures) $2,260,-000, consisting of some $785,000 in taxes, $690,000 in interest, and a 100 percent fraud penalty.

In February 1966 plaintiff submitted a revised protest to the Commission with respect to the adjustments proposed by it November 30, 1965. That protest, also treated hereinafter, seemingly met with at least partial success. In 1966 and 1967, plaintiff paid to the State of South Carolina, state income tax deficiencies, for the years 1959 through 1963, of some $785,000, plus accumulated interest thereon of some $416,500. The proposed 100 percent fraud penalty was, however, reduced to a negligence penalty of 5 percent.

Because of the complexity of the situation, the federal investigation (which included the possibility of prosecution for criminal fraud) moved more slowly. In August 1968, however, a tentative Revenue Agent's Report was delivered to plaintiff's accountant for review and comment.[6] That tentative report, covering the joint tax liability of plaintiff and his wife for the years 1960 through 1962, and plaintiff's separate

tax liability for 1963, proposed against plaintiff federal income tax deficiencies of some $11,200,000, plus fraud penalties of some $5,600,000. The principal bases for the proposed deficiencies were, again, a change of plaintiff's accounting method from cash to accrual (effective January 1, 1960) and the disallowance of substantially overstated expense deductions claimed.

Following August 1968, plaintiff's accountant continued to work closely and extensively with the Service. On March 9, 1970, a Revenue Agent's Report, proposing deficiencies in federal income tax (for the years 1960 through 1963) of some $10,750,-000, plus fraud penalties of some $5,350,000, plus interest, was issued. Plaintiff (through his accountant) acquiesced in some of the Service's proposed adjustments, but took exception to certain others.

On July 30, 1970, plaintiff filed a written protest with the Appellate Division of the Service, asserting, among other things, that in view of the Service's proposal to change his method of accounting from cash to accrual, he should be permitted to accrue certain state income tax deficiencies and interest thereon, and interest on federal income tax deficiencies, "in the years to which they relate"; that he was entitled to a deduction in 1963 for an embezzlement loss as claimed; that he should not be subjected to fraud penalties for any of the years 1960 through 1963; and that the limitation period on assessment had expired for the years 1960 and 1961, thus barring collection of any portion of the Service's proposed deficiencies for those years.[7] Among other things, plaintiff did not protest the Service's proposed change of his method of accounting from the cash to the accrual method,[8] its disallowance of certain over-

---

6. Plaintiff's accountant had worked closely with the Service in determining the extent of plaintiff's federal income tax liability, and knew approximately what the income adjustments would be long before being formally advised of them.

7. Claimant submitted a supplemental memorandum on the limitation aspect of the matter October 19, 1971.

8. As defendant asserts, in a letter dated September 20, 1971, to the Service, concerning administrative settlement of this matter, plaintiff's attorney did suggest that it would be "reasonable and just" to make the change to the accrual method effective January 1, 1963. As noted, however, plaintiff's formal protest of July 30, 1970, did not question the Service's right to make the change, nor did it question the proposed effective date thereof.

stated business expense deductions, and its position respecting his failure to capitalize certain expenditures.

In December 1971, after lengthy and complex negotiations, a Closing Agreement was executed by plaintiff and duly accepted for the Service. In the said Closing Agreement, plaintiff agreed to total deficiencies, plus interest and fraud penalties, of more than $8,725,000 for the years 1960 through 1963. The principal bases for the agreed deficiencies were a change in plaintiff's method of accounting from the cash to the accrual method effective January 1, 1962, and the disallowance of the substantially overstated expense deductions claimed for the years 1960 through 1962.

In the Closing Agreement, the net amount of the agreed deficiency for the year ended December 31, 1962, was determined without taking into account "state income taxes and interest on state and federal income tax deficiencies attributable to taxable years ended prior to January 1, 1962 which were unpaid as of January 1, 1962." Nor was plaintiff allowed a deduction in the years 1962 or 1963 for any state tax deficiencies, or for any interest on state and federal tax deficiencies, attributable to each such taxable year. In the Closing Agreement, however, plaintiff expressly reserved the right to file claims for (and, if necessary, to sue for) refund, on the ground of his entitlement to accrue as deductions such state tax deficiencies, and interest on federal and state tax deficiencies, in the years 1962 and 1963. Plaintiff's timely claims for refund for 1962 and 1963 were disallowed, and these actions followed.

### III

Treas.Reg. § 1.461–1(a)(2) (1970), originally promulgated in 1957,[9] provides in part that:

> *Taxpayer using an accrual method.* Under an accrual method of accounting, an expense is deductible for the taxable year in which all the events have occurred which determine the fact of the liability and the amount thereof can be determined with reasonable accuracy. * * * While no accrual shall be made in any case in which all of the events have not occurred which fix the liability, the fact that the exact amount of liability which has been incurred cannot be determined will not prevent the accrual within the taxable year of such part thereof as can be computed with reasonable accuracy. * * *

■ It is here undisputed that a taxpayer like plaintiff, who is required by the Service retroactively to change his method of accounting from the cash to the accrual method, is, in general terms, entitled, in employing such accrual method, to deductions for his expenses, including taxes and interest, in the years to which those expenses relate under fundamental principles of accrual tax accounting, even though such expenses may not, in fact, have been paid in such years. *United States v. Anderson*, 269 U.S. 422, 440–41, 46 S.Ct. 131, 70 L.Ed. 347 (1926). See also *Eastman Kodak Co. v. United States*, 534 F.2d 252, 209 Ct.Cl. 365 (1976); *Dravo Corp. v. United States*, 348 F.2d 542, 172 Ct.Cl. 200 (1965). In such circumstances, where an additional tax liability for a prior year is asserted by the Service, and that liability is not "contingent and * * * contested", all events necessary to determine the fact and the amount of that liability will be deemed to have occurred in the year to which the liability related, notwithstanding the taxpayer's failure to acknowledge the liability in the prior year. *Dixie Pine Products Co. v. Commissioner*, 320 U.S. 516, 519, 64 S.Ct. 364, 88 L.Ed. 270 (1944); *Dravo Corp. v. United States, supra.*

■ It is also clear, however, that under the "all events" test established in *United States v. Anderson, supra,* and embodied in Treas.Reg. § 1.461–1(a)(2), such a taxpayer's right to accrue otherwise properly deductible expenses may nonetheless be deferred beyond the year or years to which such deductions relate, if, as defendant puts it, "the taxpayer's objective acts are incon-

---

**9.** T.D. 6282, 22 F.R. 10686, December 25, 1957.

sistent with recognition of the relevant liability, that is, \* \* \* the liability is contested \* \* \*." See *Security Flour Mills Co. v. Commissioner,* 321 U.S. 281, 64 S.Ct. 596, 88 L.Ed. 725 (1944); *Dixie Pine Products Co. v. Commissioner, supra.* Where "liability is contingent and is contested by the taxpayer", there is no right to accrue that liability in the taxable year in which it would absent contest,[10] be deductible. *Dixie Pine Products Co. v. Commissioner, supra.*

## IV

For purposes of these actions only, defendant concedes that unless the state income tax deficiencies, and interest on state and federal income tax deficiencies, which plaintiff claims the right to accrue as deductions for 1962 and 1963, "represent contested liabilities, they are deductible as trade or business expenses in determining taxable income for 1962 and 1963."[11] As defendant sees it, the "only issue in these actions is whether these items are deductible in 1962 and 1963 (the years to which they relate), or whether, because \* \* \*" plaintiff contested liability therefor, the deductions may be claimed only after the tax years here in suit.

As noted at the outset, defendant opposes plaintiff's motion for summary judgment on the grounds that the presence of fraud in the submission of state and federal income tax returns constitutes a contest with respect to any later determined deficiencies, and interest thereon, relating to those returns, and that, on the record presently before the court, there is a genuine issue of fact whether the 1959–63 state and 1960–62 federal income tax returns filed by or on behalf of plaintiff were fraudulent. Thus, defendant concludes that denial of plaintiff's motion for summary judgment, and remand for trial, are required.

Rule 37(b) of the Rules of this court requires that in pleading to a preceding pleading a party "shall set forth affirmatively \* \* \* fraud \* \* \*." See also Rule 33(b). Defendant's answers in these cases, filed June 22, 1972, and October 4, 1974, respectively, do not plead fraud. See Rule 38(h). Nor has defendant filed a motion for leave to amend its answers herein. *Cf. Hess v. United States,* 537 F.2d 457, 210 Ct.Cl. 483 (1976), *cert. denied,* 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977); *Cities Service Helex, Inc. v. United States,* 543 F.2d 1306, 1313 n. 14, 211 Ct.Cl. 222, 234 n. 14 (1976). In light of plaintiff's lack of objection to defendant's failure to plead fraud affirmatively, and the court's decision in *Hess,* however, it seems appropriate to reach the substance of defendant's arguments.

What plaintiff does contend, with vigor, is that even assuming a fraudulent attempt, in the filing by or on behalf of plaintiff of state or federal income tax returns, to evade income tax liability, such an attempt would not constitute a "contest" of such liability. Plaintiff also contends, however, that defendant is in any event foreclosed by the 1971 Closing Agreement from raising the issue of fraud in the instant matter.[12]

---

**10.** Treas.Reg. § 1.461–2(b)(2) (1970), promulgated in T.D. 6772, 29 F.R. 15753, November 24, 1964, provides in pertinent part that a "contest arises where there is a bona fide dispute as to the proper evaluation of the law or the facts necessary to determine the existence or correctness of the amount of an asserted liability." While the institution of court action is not necessary in order to contest an asserted liability, "An affirmative act denying the validity or accuracy, or both, of an asserted liability to the person who is asserting such liability \* \*" is. *Ibid;* see also *Dixie Pine Products Co. v. Commissioner, supra.*

**11.** In its reply brief, defendant suggests that this concession does not refer to "a 'contest' in

the technical sense of that word", but rather should be read "to be a concession of deductibility only if there is neither a 'contest' nor any other contingency which would prevent satisfaction of the controlling 'all events' test." In this case, the difference defendant thus purports to see is in fact merely semantic.

**12.** Plaintiff adds that, should fraud be deemed a "contest" and the issue of fraud not be foreclosed, he would vigorously defend the position that neither he nor his former wife was guilty of fraud in the filing of their joint federal income tax returns for 1960–62, and that his 1963 separate returns, filed by his accountant, could under no circumstances justifiably be characterized as fraudulent.

In *Dravo Corp. v. United States, supra,* the taxpayer filed a 1953 capital stock tax return with the Commonwealth of Pennsylvania, and the stock valuation reflected in that return was accepted. In 1956, however, the Commonwealth reviewed the 1953 return and, in consequence, increased the capital stock tax attributable to 1953 by some $32,000. The taxpayer paid the additional tax without appeal or protest, filed a claim for refund of federal income taxes for 1953 on the ground that the additional tax attributable to 1953 was deductible in that year, and, when its claim for refund was disallowed, sued defendant to recover (among other things) the resulting asserted overpayment.

In this court, in an effort to prevent accrual of the additional tax attributable to 1953 in that year, pursuant to the refinement added to the "all events" test in *Dixie Pine Products Co. v. Commissioner, supra,* defendant argued "that the mere filing of a state tax return acknowledging a liability in a stated amount is a 'contest' since that entails a denial by the taxpayer that it owes an amount of tax greater than that specified on the return." *Dravo Corp. v. United States, supra,* 348 F.2d at 545, 172 Ct.Cl. at 206.

In holding for the taxpayer, the court stated that (*ibid*):

\* \* \* We do not think it proper to extend the concept of 'contest' to the instant situation where the only basis for such an extension is the taxpayer's subjective motive as to what was intended when a return was filed. If a departure from the traditional concepts of proper accrual tax accounting is required by the

fact of contest, [footnote omitted] it should be evidenced by taxpayer's objective acts; *i. e.,* lodging a formal protest with the tax authorities or instituting a suit in a court of law. \* \* \*

See also *National Forge & Ordinance Co. v. United States,* 158 F.Supp. 860, 141 Ct.Cl. 880 (1958); *Lutz v. Commissioner,* 396 F.2d 412 (9th Cir. 1968); *Woodmont Terrace, Inc. v. United States,* 261 F.Supp. 789 (M.D. Tenn.1966); *Harry Gordon,* 63 T.C. 501 (1975); [13] Treas.Reg. § 1.461–2(b)(2); Rev. Rul. 68–631, 1968–2 Cum.Bull. 198.

In *Harry Gordon, supra,* the taxpayer was a partner in a company which operated a wagering business in the State of Nevada. There, the Tax Court held that the taxpayer's attempted evasion of taxes, by an unsuccessful effort at concealment of certain wagering transactions, did not constitute a dispute or contest so as to defeat accrual of the excise tax attached to the wagers, in these words (*id.,* at 504–05):

\* \* \* To construe the regulation under such circumstances to place the income and the directly correlative expense in different taxable years would be unnecessarily and gratuitously to move away from the objective of proper measurement of income. We see no reason to find that the petitioner's attempted concealment of part of the income, reprehensible though that was, constitutes a license to respondent to force upon the [company] an accounting method which does not properly reflect its income. We do not believe that the [company] may defer accrual of an associated expense clearly due and payable, any more than it can defer accrual of the corresponding

**13.** [Footnote by the Court]

The Tax Court opinion, modifying 63 T.C. 51 (1974), was appealed by the government to the Ninth Circuit Court of Appeals on the ground that the continuing litigation concerning the amount of unreported wagering income prevented the accrual of the excise tax expenses associated with that income. The Ninth Circuit accepted the government's argument and reversed the Tax Court. *Gordon v. Commissioner,* 572 F.2d 193 (9th Cir. filed Aug. 22, 1977).

We note that the Ninth Circuit was not faced with the specific issue involved in the present

case, that is, whether the concealment of transactions is a "contest" for purposes of the "all events" test, but have, nonetheless, weighed the opinion of the Ninth Circuit carefully. We believe that, in the circumstances of the present case, the trial judge's reliance on the result reached and the reasoning employed by the Tax Court was not misplaced, since it appears that the Tax Court decision was more in consonance with our rationale in *Dravo* and with the relevant authorities, regulations, and rulings.

gross income, merely because petitioner intended to try to conceal the transactions. We are cited to, and find, no authority holding that attempted concealment of a transaction creátes a 'dispute' within the meaning of the regulation, and we decline to so hold.

The holding in *Gordon*,[14] the rationale of *Dravo*, and the relevant authorities, regulations, and rulings point clearly to the conclusion that mere fraud in the filing of a state or federal income tax return does not create a contingency and contest, within the meaning of the "all events" test, with respect to later determined deficiencies, and interest thereon, relating to that return.[15] Thus, even assuming the presence of fraud in the submission of plaintiff's state and federal income tax returns, any later determined deficiencies, and interest thereon, relating to the assertedly fraudulent returns, would not thereby be rendered "contingent and * * * contested by the taxpayer" so as to require deferral under the "all events" test of accrual beyond the taxable years to which they otherwise properly, and admittedly, relate. *Dixie Pine Products Co. v. Commissioner, supra; Dravo Corp. v. United States, supra; Harry Gordon, supra;* Treas.Reg. § 1.461–2(b)(2); Rev.Rul. 68–631, 1968–2 Cum.Bull. 198.

The conclusion just stated makes it unnecessary to consider either defendant's argument that there exists a genuine issue of material fact with respect to whether plaintiff submitted fraudulent returns to the State of South Carolina for the years 1959 through 1963, and to the Service for the years 1960 through 1962, or plaintiff's assertion that defendant is in any event precluded by the 1971 Closing Agreement from now raising the issue of fraud herein.

Still to be resolved herein are, however, other issues: whether, as defendant also contends, plaintiff's protests to the Commission, or his submissions to the Service, constituted a "contest" of portions of state income tax deficiencies and interest there-on, and interest on federal income tax deficiencies, plaintiff now claims the right to deduct in 1962 and 1963. It is clear from the briefs, however, that should defendant's opposition to plaintiff's motion for summary judgment on the ground that a genuine issue of material fact éxists be rejected, as it has been, allowance of plaintiff's motion for summary judgment herein, at least in part, is proper.

Accordingly, and insofar as it is based on the asserted existence of a genuine issue of material fact, defendant's opposition to plaintiff's motion for summary judgment should be denied. To the extent thus opposed on invalid grounds, plaintiff's motion for summary judgment should be granted.

## V

Plaintiff's motion for summary judgment herein encompasses, and defendant's cross-motion for partial summary judgment is limited to, certain state income tax deficiencies and interest thereon, and interest on federal income tax deficiencies, claimed as deductions in the years 1962 and 1963. Defendant contends, and plaintiff denies, that plaintiff's protests to the Commission, and his submissions to the Service, establish that liability for such state tax deficiencies and interest thereon, and interest on such federal tax deficiencies, were "contested", and are therefore not accruable as deductions in the years to which they would otherwise relate, but must be deferred until later years, when liability was either conceded or paid.

### (A) *The Protests to the Commission*

In February 1965, the Commission first proposed adjustments to plaintiff's state income tax returns for the years 1959 through 1963. The said adjustments were primarily based upon a retroactive change in plaintiff's method of accounting from the cash to the accrual method effective January 1, 1959, the disallowance of overstated

---

**14.** [Footnote by the Court]

This, of course, refers to the holding of the Tax Court. See note 13, *supra*.

**15.** Any such fraudulent activity may, of course, be dealt with effectively. *E. g.*, §§ 6653(b), 7201, Internal Revenue Code of 1954.

expense deductions claimed, and the disallowance of a claimed embezzlement loss in 1963.[16]

In March 1965, in a written protest to the Commission, plaintiff protested, among other things, "the proposal to change retroactively the taxpayer's method of accounting from the cash receipts and disbursements basis * * * to the accrual basis," and the "proposed imposition of a 100% penalty * * * and the imposition of additional interest * * *." The March 1965 protest included the assertions that plaintiff's business "was * * * a service organization and as such it was entitled to file its returns on the cash method", and that, even if plaintiff's method of accounting "were to be changed * * * it should not be changed retroactively." [17]

On May 31, 1965, the Commission held a hearing in the matter. At the said hearing, plaintiff's representative stated, among other things, that plaintiff "is entitled to stay on the cash basis method of reporting"; that plaintiff's business "is a service business and * * * that [plaintiff] is entitled to stand on his cash basis method of reporting"; that "it being a service business [the cash method] * * * is a fair method for the taxpayer to be on under all these conditions"; that " * * * our argument that this is a service industry * * would be difficult for this Commission to disregard"; and that "our fundamental contention [is] that the business was and is, for the years in question, a service business."

Notwithstanding, plaintiff contends that his protest to the Commission was, "in effect, only an appeal to discretion" with respect to the effective date of change of plaintiff's method of accounting from cash to accrual, not a "contest" within the meaning of the "all events" test.[18] There are in the Commission hearing undeniable equitable overtones and arguments. Even assuming, for present purposes, that an "equitable" attack on proposed adjustments would not amount to a "contest", however, it must be and is concluded from the undisputed facts that plaintiff made a direct and substantial challenge to the Commission's proposed change in his accounting method, thereby rendering his liability for state income tax deficiencies, and interest thereon, attributable to such a change "contingent and * * * contested", for purposes of the "all events" test. *Security Flour Mills Co. v. Commissioner, supra; Dixie Pine Products Co. v. Commissioner, supra.*

Plaintiff alternatively contends that, even assuming a "contest" of the Commission's proposed retroactive change in his method of accounting, there was no more than a discussion of the question "when the items of revenue affecting the timing of his actual state tax payments would be reported to the state", not his "substantive liability for state income taxes on that revenue." The argument is both ingeniously and beautifully presented, but unpersuasive.

When plaintiff contested before the Commission portions of his proposed liabilities for state income tax deficiencies, and inter-

16. While defendant's moving brief suggested that the claimed embezzlement loss deduction was here involved, the record is clear that neither the proposed adjustments attributable to disallowance of overstated expense deductions claimed, nor the proposed adjustment attributable to disallowance of the claimed embezzlement loss in 1963 has any present relevance, for purposes of defendant's cross-motion. Plaintiff did not contest the former proposal, but admittedly did contest, and makes no claim concerning, the latter one.

17. In February 1966 a revised protest, substantially identical to the earlier one insofar as the retroactive change of accounting method is concerned, was submitted to the Commission.

It would appear that as a result of the revised protest the proposed 100 percent fraud penalty was reduced to a negligence penalty of 5 percent.

18. At one point in the hearing, the Commission stated to plaintiff's representative that " * * * there is no barrier to a real concerted review, I don't suppose, you are suggesting at this date. You aren't suggesting that they have no right at all to do this—you're merely suggesting the hardship involved, as I understand it." Plaintiff's representative replied "That's correct, yes sir." The ambiguous nature of this colloquy aside, plaintiff plainly and repeatedly did assert at the hearing a right "to stay on the cash basis method of reporting".

est thereon, for the tax years 1959 through 1963, on the ground he was entitled in those years to remain on the cash method of accounting, his actions in so doing rendered contingent and contested his liability for a portion of the sums he would now accrue in the years 1962 and 1963. The relevant authorities teach that in these circumstances accrual of the contested portion of the deductions claimed in such years is improper. *Security Flour Mills Co. v. Commissioner, supra; Dixie Pine Products Co. v. Commissioner, supra.*

■ *Gillis v. United States,* 402 F.2d 501 (5th Cir. 1968); *The Washington Post Co. v. United States,* 405 F.2d 1279, 186 Ct.Cl. 528 (1969), and a number of other authorities, relied upon by plaintiff in support of the argument that his liabilities for "protested" state tax deficiencies, and interest thereon, were neither contingent nor contested, simply miss the mark. Without any quarrel with plaintiff's argument that it is the certainty of liability, and not the timing of payment, that is crucial to accruability, it suffices to answer, as defendant does, that a substantial protest directed toward reduction or deferral of an asserted liability for a given year amounts to a contest of some ·or all of that liability for that year, and thereby destroys the asserted certainty of liability upon which plaintiff relies. *United States v. Texas Mexican Ry. Co.,* 263 F.2d 31, 34 (5th Cir. 1959); *Helvering v. Russian Finance & Constr. Corp.,* 77 F.2d 324, 327 (2d Cir. 1935); *cf. Lutz v. Commissioner, supra; Woodmont Terrace, Inc. v. United States, supra.*

(B) *The Submissions to the Service*

The final issues to be resolved center upon plaintiff's written submissions to the Service, in 1970 and 1971, with respect to certain federal income tax deficiencies proposed in the revenue agent's March 9, 1970 report, and their effect upon plaintiff's claim of right to deduct in the years 1962 and 1963, interest on such deficiencies.

■ 1. As a result of circumstances under which the Service had obtained from plaintiff consents extending the statutory period of limitation, plaintiff took the position in July 1970 (and thereafter) that the statute of limitations on the assessment and collection of proposed federal tax deficiencies for the years 1960 and 1961 had expired. Defendant contends that plaintiff's liability for such deficiencies, and for interest on such deficiencies in the years 1962 and 1963, was thus contested, and that plaintiff therefore may not properly accrue and deduct interest on such deficiencies in the years (1962 and 1963) to which such liabilities would otherwise relate.

Every asserted liability is subject to the possibility that the statute of limitations may ultimately run against its collection. The mere "possibility that a present ˹liability may subsequently be discharged by some condition subsequent does not prevent its accrual on the taxpayer's books. * * * When books are kept on an accrual basis, a presently existing obligation which, in the normal course of events, the taxpayer is justified in believing he must fulfill, may be accrued. The existence of an absolute liability is necessary; absolute certainty that it will be discharged by payment is not." *Helvering v. Russian Finance & Constr. Corp., supra,* 77 F.2d at 327. Defendant's contrary argument is clearly untenable.

2. Defendant's moving brief contended that plaintiff contested the Service's failure to allow depreciation on an annealing furnace for 1962, and that "the applicable interest which related to 1963" was thus contested and not deductible in that year. While the Service's denial of a deduction for such depreciation for 1962 was admittedly contested, no part of plaintiff's claim herein involves interest on federal income tax deficiencies resulting from the Service's disallowance of a deduction for depreciation on the annealing furnace in 1962.

■ 3. Finally, defendant says that a statement by plaintiff to the Commission that under both federal as well as state law he was entitled to continue to use the cash method of accounting, and plaintiff's September 20, 1971 suggestion to the Service that it would be "reasonable and just" to

make the change in accounting method effective January 1, 1963, demonstrate that plaintiff contested his liability for increased federal income taxes (and interest thereon) attributable to a change in accounting method until 1971, and that, in consequence, the accrual of a deduction in 1963 for interest on such increased federal income tax deficiencies for 1962 "must be deferred until liability was either conceded or paid." Neither of these arguments has any merit.

It is difficult to conceive how an argument, however strongly worded, to the Commission might properly be deemed a contest of a liability asserted by an entirely different taxing authority. At the very least, denial of "the validity or accuracy, or both, of an asserted liability *to the person who is asserting such liability* * * *" is essential to the concept of "contest". Treas.Reg. § 1.461–2(b)(2). A passing suggestion to a party wholly unconcerned with liability to another that such liability may not exist cannot properly be considered to have the effect urged by defendant.

 Nor does plaintiff's request, late in 1971, that the Service exercise its discretion preclude the accrual in 1963 of interest on increased federal income tax deficiencies for 1962 resulting from a change in plaintiff's method of accounting. *Lutz v. Commissioner, supra; Woodmont Terrace, Inc. v. United States, supra*; Treas.Reg. § 1.461–2(b)(2). There was no bona fide dispute concerning the Service's right to make the change in accounting method ef-

fective January 1, 1960, as originally proposed, but only a naked suggestion to the Service as to when the change might be made effective.[19] When the Service concluded that the effective date of the change would be January 1, 1962, it was not authorized to deny plaintiff the benefit of consequences flowing from that change in accordance with the accrual method simply because of his September 1971 request. *Ibid.* See also *Dravo Corp. v. United States, supra.*

## VI

For the reasons and under the authorities, and to the extent, set forth hereinabove, plaintiff's motion for summary judgment should be granted in part and denied in part, defendant's opposition to plaintiff's motion for summary judgment on the ground that a material issue of fact exists should be overruled, and defendant's motion for partial summary judgment should be denied in part and granted in part. Judgment should be entered that plaintiff is entitled to recover, and the case should be referred to the trial division for further proceedings pursuant to Rule 131(c).

---

**19.** Parenthetically, plaintiff's request to the Service, and his position before the Commission, with respect to the effective date of the change in accounting method differ sharply and significantly, and justify, and require, the differing treatment accorded them.